TIEN MINH NGUYEN
FULL NAME
CDCR NO: P-12755
COMMITTED NAME (if different)
CALIFORNIA MEDICAL FACILITY
FULL ADDRESS INCLUDING NAME OF INSTITUTION
1600 California Drive
P.O.Box 2500  - Dorm C-115L
PRISON NUMBER (if applicable)
Vacaville, Ca 95696-2500



FILED
CLERK, U.S. DISTRICT COURT

OCT 11 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIEN MINH NGUYEN<br><br>PLAINTIFF,<br><br>v.<br>J. LEWIS-DEPUTY DIRECTOR<br>T. MACIAS-CEO. HIRING AUTHORITY<br>S. LEE-DOCTOR OF MEDICINE   DEFENDANT(S). | CASE NUMBER<br>2:15-cv-07600-PSG (AS)<br>*To be supplied by the Clerk*<br>THIRD AMENDED COMPLAINT<br><br>**CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☒ 42 U.S.C. § 1983  JURY TRIAL DEMAND<br>☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes   ☐ No

2. If your answer to "1." is yes, how many?  One, cv 05-130-LAB (JMA)

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)
In the UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF CALIFORNIA ( SAN DIEGO)
DCKET NO: cv-05-0139-LAB (JMA)

NGUYEN, TIEN MINH
Plaintiff

       V.
G.J. GIURBINO, WARDEN
J.L. NICHOLS, COUNSELOR CC1
J.A. GROSSET-MED. TECHN. ASSISTANT
Defendants

2

FULL NAME
TIEN MINH NGUYEN
CDCR No: P12755

COMMITTED NAME (if different)

FULL ADDRESS INCLUDING NAME OF INSTITUTION
CALIFORNIA MEDICAL  FACILITY
1600 California Drive

PRISON NUMBER (if applicable)
PO.BOX 2500  -  Dorm C 115L
Vacaville,CA95696-2500



```
                    FILED
        CLERK, U.S. DISTRICT COURT

            APR 2 8 2016

        CENTRAL DISTRICT OF CALIFORNIA
        BY                    DEPUTY
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

TIEN MINH NGUYEN

                                    PLAINTIFF.

                    v.

J. LEWIS- DEPUTY DIRECTOR
T. MACIAS- CEO. HIRING AUTHORITY
S. LEE - DOCTOR OF MEDICINE          DEFENDANT(S).

D EFENDANTS

CASE NUMBER

2:15-CV-07600-PSG-(AS)
                    To be supplied by the Clerk

SECOND AMENDED COMPLAINT

CIVIL RIGHTS COMPLAINT
PURSUANT TO (Check one:)
☒ 42 U.S.C. § 1983    JURY TRIAL DEMAND
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

A. PREVIOUS LAWSUITS

1.  Have you brought any other lawsuits in a federal court while a prisoner: xx Yes    ☐ No

2.  If your answer to "1." is yes. how many? One; CV- 05- 130 - LAB (JMA)

    Describe the lawsuit in the space below. (If there is more than one lawsuit. describe the additional lawsuits on an attached piece of paper using the same outline.)

In the UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF CALIFORNIA ( SAN DIEGO )
DOCKET No: CV - 05 - 0130- LAB (JMA)


        NGUYEN,TIEN MINH
        Plaintiff


                V.


        G.J. GIURBINO,WARDEN;
        J.L. NICHOLS COUSELOR CC1
        J.A. GROSSET- MED. TECHN. ASSISTANT
        Defendants

18 / 24 - 10079528

1/

a. Parties to this previous lawsuit:
Plaintiff NGUYEN, TIEN MINH

Defendants  G.J. GIURBINO, WARDEN
         J.L. NICHOLS CC1 & J.A. GROSSET, MTA (Clinic, D Yard)

b. Court    UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF CALIFORNIA

c. Docket or case number  CV-05-0130-LAB (JMA)

d. Name of judge to whom case was assigned  LARRY A. BURNS

e. Disposition (For example:  Was the case dismissed?  FOR "Failure to state a claim" If so, what was the basis for dismissal?  Was it appealed?  Is it still pending?)  For "Failure to state a claim"

f. Issues raised: Warden violates I/M First Amend. US Constitution to reach higher level Appeals (CDC 602 disappeared at 1st level)- CC1 NICHOL WANTONESS - J.A. GROSSET MTA. denies Dental Care: Retaliation

g. Approximate date of filing lawsuit:  May 2005

h. Approximate date of disposition  Mar 2007

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes    ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes    ☐ No

   If your answer is no, explain why not

3. Is the grievance procedure completed? ☒ Yes    ☐ No

   If your answer is no, explain why not

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff  TIEN MINH NGUYEN
At INITIAL FILING OF COMPLAINT:
                                      (print plaintiff's name)
who presently resides at CALIFORNIA MEN'S COLONY WEST/ PO.BOX 8103 CA 93409
                          (mailing address or place of confinement)
were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
CALIFORNIA MEN'S COLONY WEST/ PO.BOX 8103- Dorm 23 / 17L
                    (institution city where violation occurred)

San Luis Obispo, CA93409

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIEN MINH NGUYEN<br>　　　Plaintiff<br><br>　　　　　V.<br><br>J. LEWIS, Deputy Director<br>T.MACIAS, CEO, Hiring Authority<br>S.LEE, Doctor of Medicine<br>　　　Defendants | ) SECOND AMENDED COMPLAINT<br>)<br>) Case no. 2:15-cv-07600-PSG-AS<br>)<br>)<br>) JURY TRIAL DEMAND<br>)<br>)<br>) **LIST OF PARTIES**<br>) |

1- Plaintiff TIEN MINH NGUYEN,DOB:DEC.09-1937,who at the time of initial
COMPLAINT FILING DATE is prisoner at the CALIFORNIA MEN'S COLONY PRIS
PRISON; now after recent transfer is currently prisoner at the CALIFORNI
MEDICAL FACILITY - Vacaville,CA 95696-2500.

2- Defendant J. LEWIS Deputy Director California Prison Health Care Srvs
Reviewer of Third Level I/M Appeals,not only violated Constitutional
Liability, but also contributed to the retaliation against plaintiff. He
is sued in his individual capacity.

3- Defendant S.LEE,MD, underhandedly prescribed noxious overdose medicin
nes with premeditation and conscious disregard of inmate plaintiff's
Health and Safety,causes serious internal injuries. His acts amount to
deliberate indifference,violating the 8th Amend. Constitution rights of
plaintiff. He is sued ender his individual capacity.

4- Defendant TERESA MACIAS-CEO- Hiring Authority- Designee" and reviewer
of both the 1rst & 2nd Levels Appeals violates plaintiff's First Amend.
U.S. Constitution by taking retaliation against plaintiff. She is sued
under her individual capacity.

　　　　At all time relevant tothe events described herein,
　　　　all the defendants have acted under color of State Law.

on (date or dates) *From: July 24th, 2014 to June 26th, 2015*

(Claim I)    (Claim II)    (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

(1) Defendant *Scott LEE Doctor of medicine* resides or works at
(full name of first defendant)

*California Men's Colony - P.O. Box 8103*
(full address of first defendant)  *San Luis Obispo, CA 93409*
*Doctor of Medicine at CMC-Unit Health Care*
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☐ official capacity.

Explain how this defendant was acting under color of law: *Prescribed overdose medications and Direct Observed Therapy method w/out informing plaintiff and w/out plaintiff's consent. "Underhandedly chosen course of treatment"*
*cont'd*

(2) Defendant *J. LEWIS - Policy & Risk management Service* resides or works at
(full name of first defendant)

*Office of 3rd Level Appeals, Bldg C - P.O. Box 588500*
(full address of first defendant)  *Elk Grove, CA 95758*
*Deputy Director - Calif. Correctional Health Care Services.*
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☐ official capacity.

Explain how this defendant was acting under color of law: *Def. J. LEWIS "...who set policies, write Regulations and Procedures, or give orders and control works." must be Constitutionally Liable in several consequences inflicted*
*cont'd*

(3) Defendant *Teresa MACIAS - CEO - Hiring Authority - Designee* resides or works at
(full name of first defendant)

*California Men's Colony - P.O. Box 8101 - S. Luis Obispo, CA 93409*
(full address of first defendant)

*CEO - "Hiring Authority / Designee"*
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☐ official capacity.

Explain how this defendant was acting under color of law: *The First Amend. U.S. Constitution prohibits prison officials from Retaliation against inmates/patients who report complaint, file grievances or Lawsuits. CEO T. MACIAS took retaliation on plaintiff for some direct motives (e.g. Reporting Dr. S. LEE wrongdoings to Calif- Inspector General and for discourteously demanding to bring this case to Calif. Medical Board) There might be also other Remote motives such as grievances*
*cont'd*

Defendant S. LEE MD, cont'd:

1 is equivalent to "medically unacceptable under the circums-
2 tances" and was chosen "in conscious disregard of an excessive
3 risk to the prisoner's health" and actually causing serious
4 internal injuries. The whole scheme amounts to deliberate
5 indifference, violating plaintiff's 8th Amendment Rights.
6        As a norme in Physicians' Assignment in CMC-WEST, Dr. S. LEE
7 was not the 'Regular' Primary Care Provider for prisoners w/ CDCR
8 last two numbers from 33 to 66, however he, all of the sudden, gave
9 plaintiff an uninvited, unexpected doctor-visit in June 30, 2014
10 then made planning and premeditations for 23 days before he
11 could finally made filling of medications (w/ Pharmacy) for an
12 overdose meds to be taken in one full mouthing every single day
13 under Direct Observed Therapy (DOT) for 365 days.
14        About 10 days after taking that noxious overdose meds
15 plaintiff felt sick with palpitation, dizziness, muscle cramps
16 lower back-pain and liver pain. This case was not, and is not
17 concerned with medical NEEDS. It is a physician's wanton
18 enfliction of pain by interfering w/ plaintiff body w/out good
19 reason. In a crafty, slify manner Dr. S. LEE had violated plaintiff's
20 Due Process Right, and the length of 23 days of premeditation
21 shows his deliberate indifference to plaintiff's welfare and Health.
22        There are cases where "If a doctor gives a drug to an
23 inmate without his consent, the drug must be medically appropriate"
24 This is not applicable to the present case where plaintiff is not
25 strucked inconcious with brain-damaged, or mentally insane.
26        One of the causation of defendant S. LEE MD is to
27 enflict the plaintiff with Hepatilis C then send him to American
28 Association for the Study of Liver Diseases (AASLD) and obtain
some incentives or some favors. Other proximate causes are
presented in "Memorandum of Points and Authorities."

Defendant J. LEWIS - continued:

— By his order: "No change or modification are required by the Institution" the ensuing consequences are detrimental to plaintiff: ① The CMC-UNIT Health Care continues administration of overdose meds for one more year (2016) while plaintiff had requested "Discontinuation" since May 13th, 2015, because aggravation of back-pain, esp right side kidney and continuous fatigue. ② The PCP is, Dr. C. Guiang had stopped the every-three-month Medical Follow-up Routine as used to be in previous years. (because of instigation of hatred & grudge toward plaintiff)

— Def. J. LEWIS implication on the Chronic care Program for plaintiff's Hep.C - while not a single lab test among two dozens had arrested in plaintiff whole life. — Except the deceptive one from Dr. LEE's Progress Note — this indicates his contribution to all three defendants' combined activities to retaliate on plaintiff for taking grievance beforehand to Calif. Inspector General, and for discourteously demanded to bring Dr. LEE to Calif. Medical Board

— His statement "Do not control the professional judgment" rejects prisoner's right to consent or refuse treatment - The Director ignores his own Policy & Procedures with Deliberate Indifference violating the 8th Amend on plaintiff's right.

— Misrepresentation of facts: "There is no documentation to support allegation that your care was inappropriate on June 27th 2014" — malicious instigation of deep resentment on Dr. Taylor toward inmate because on that precise date Dr. Taylor was on duty at ER- East Hospital; scrutinies should have pointed at June 30th 2014 instead.

— Def. J. LEWIS avoids the CEO T. Macias' twice repetitive statement of "you're requesting urgent investigation on your PCP's expertise and for criminal intent" this proves J. LEWIS has full knowledge of the wrongs, but denies to respond effectively to both T. Macias and Dr. LEE wrong doings: Another deliberate Indifference in the face of resultant pain and risk of permanent injuries to plaintiff's internal organs, and further more at the results of incessant nightmares, distress, stomach upsets, emotional sufferings w/ worries of sudden death by infliction of drugs poisoning - or some other ways of harm; in short an insecure future — 6/

Defendant T. MACIAS cont'd:

against prison staff and MTA nurse in year 2005, and against Centinela Dentists and cold, unconcerned counselors

Several adverse actions from CEO T. Macias against plaintiff disclose her ill-will to Retaliate on his protected right of speech. The point of the complaint to court is NOT that the inmates' Appeals Reviewers "ruling against prisoner's on an administrative complaint..." but the "gist of the discontent here is rather the reviewers' subjective intents to afflict malefactions to plaintiff; those intents seeping through the nuances of expressions, through manipulations and machinations, through distortions and misrepresentations of plaintiff's statements or pleadings -

① - To cover-up the Dr. Lee wrongdoings, defendant Macias break up the initial complaint "noxious overdose meds prescribed by..." and "Action required: urgent investigation on Dr. Lee expertise and his latent criminal intent >> to be transformed into "Issue Type = Meds distribution" and "Action Required = Noxious overdose Requested"

② - In this self-redacted, fraudulent Progress Note under the name of Dr. Lee, there were also emphasis on "Chronic Hep. C" and on "illicit intravenous drug use" that are no-where mentioned in any of Twe dozen Lab Test Records, except only in that calumnious Progress Note.

③ - T. Macias undermines the CDCR 602 HC by machination, manipulation in truncating plaintiff's statements, interpoling clauses and phrases to make the whole pleading to become rubbish. Then diverts the inmate request for "investigation on Dr Lee's expertise and criminal intent" to plaintiff's PCP, thus instigating grudge on Dr. C. Guiang towards the plaintiff.

④ - The combined activities from defendants T. Macias & T. Lewis in impeding the plaintiff from exercising his 1st Amend. Const'l Right is the most deliberate indifference on plaintiff's right.

⑤ - In all the Retaliation actions do not "reasonably advance legitimate penological goal in any imaginable way.

4. Defendant    _N A_                         resides or works at
                (full name of first defendant)

                (full address of first defendant)

                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____


5. Defendant    _N A_                         resides or works at
                (full name of first defendant)

                (full address of first defendant)

                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

**D. CLAIMS***

<u>CLAIM I</u> DELIBERATE INDIFFERENCE

The following civil right has been violated: 1. Defendant T. Lewis, after being notified and informed of the risk of serious harm and injuries, kept ordering "no change or modification is needed by the Institution" is as deliberate indifferent as ordering "no change to three drugs lethal injection at Calif. death execution!

2. Def. T. Macias by fabricating the Dr. Lee Progress Note shows deliberate indifference by diverting, inhibiting exercise of Protected Right To access to court by his obstruction of Justice

3. Def. S. LEE MD acted on his own knowledge of a substantial risk of serious harm to plaintiff, violates the 8th Amend Right of plaintiff to be free from deliberate indifference to his health and safety.

<u>CLAIM II</u> VIOLATION ON 1ST AMENDMENT

1. Def. T. LEWIS contributed to the Retaliation against plaintiff w/ neglect of Constitutional Liability in face of serious harm to plaintiff, then with instigating hatred on ER Dr. Taylor towards plaintiff.

2. Def. T. MACIAS conspicuously takes Retaliation by misrepresentation, distortion of plaintiff's statements, falsifying the so called Dr. LEE Progress Note and instigating hatred and grudge on PCP Dr. Guang toward plaintiff.

<u>CLAIM III</u> VIOLATION ON DUE PROCESS CLAUSE

3. Def. S. LEE MD. violates plaintiff's Right Not to have prison officials interfere with his body without informed consent, or other good reasons.

<u>Supporting Facts:</u> Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Def. T. LEWIS - Final order of "No change or modification is needed by the Institution" causes furthering of overdose medi by CMC title for another year.
- Instigation of grudge on Dr. Taylor towards plaintiff.
- Neglect of Constitution Liability by ignoring his own Policy & Procedures concerning prisoner's right to consent or deny, refuse medical treatment

Def. Scott LEE MD - Administrating Non medically appropriate, esp. under DOT and in a sly, underhanded manner & w/out informing the plaintiff.
- Causing bodily disturbances by overdose meds and inappropriate method of DOT applied in this circumstance.
- Malicious suggestion of Chronic Hepatitis C in the Progress Note for purpose of future malefactions against the plaintiff.

Def. T. MACIAS - Instigating hatred and grudge on PCP Dr. Guang in the inmates Appeals' Response.
- Obstruction of justice by distortions + misrepresentations of plaintiff's statements to transform the accusations on Dr. LEE into Rubbish.
- Falsifying, fabricating the Dr. LEE's Progress Note with purpose to cover-up the physician's wrongdoing and to incriminate plaintiff with "illicit intravenous drug use" and "previously Refuse treatment" of "Chronic Hepatitis C, genotype 1." (Baseless allegation of.)

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

22/24 - 110479528

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

(1) - Declare that the acts and omissions described herein violated plaintiff's Rights under the Constitution and laws of the United States of America.

(2) - The recurrence of a scheme aiming to inflict danger of irreparable harm and/or serious internal injuries urges the plaintiff to seek for an urgent order compelling the defendants to annul, to abandon for good, the scame aiming in inflicting Chronic Hepatilis C on plaintiff, as it still persisting until today.

(3) - Issue Preliminary injunction to defendants to secure the plaintiff from frequent transfer and to secure plaintiff future from harassment, from reprisal or agressive, hostile environment.

(4) - Order CMC-UHC to send offical Notes of clarification on the wrongful statements and misrepresentations instigating hate and grudge on PCP Dr Guiang and ER Dr D Taylor. To relieve plaintiff from any misunderstanding.

(5) - Enter Judgment in favor of plaintiff for compensatary and nominal damages as allowed by law, against each defendant jointly and/or severally.

(6) - Order such additional Relief as this Court deem just and proper.

April 22, 2016
_(Date)_

_(Signature of Plaintiff)_
TIEN MINH NGUYEN - CDCR# P12755
California Medical Facility
PO BOX: 2500
Vacaville, CA 95696.

12

MEMORENDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S COMPLAINT

This is a 42 USC §1983 action filed by the prisoner after being tranfered to California Medical Facility (CMF) in lieu of §1983 action at California Men's Colony West (CMC-WEST Prison) seeking damages and preliminary Judgment based on the abuse of medical professionality to improvise a detrimental method of therapy on the inmate without forewarning of side effects and without consent or refusal of inmate as decreed by Constitutional Due Process Clause and dictated in California Prison Health Care Services' Policies and Procedures.

Ⓐ - TABLE OF CONTENTS

Point Ⓘ - Claims under Deliberate Indifference.

1 - Mc Aleese V. Owens 770 F Supp 355,363 (MD. Pa 1991)

2 - Gindraw V. Dendler. 967 F Supp 833, 840 (ED Pa 1997)

3 - Lolli V. County of Orange 351 F3d 410,415 (9th Cir. 2003)

4 - Estate of Cole by Pardue V. Fromm 94 F3d 254, 257 (7th Cir. 1996)

5 - Hayes V. Snyder. 546 F3d 516, 523 (7th Cir. 2008)

6 - Mata V. Saiz 427 F3d 745, 753 (10th Cir. 2005)

Point Ⓘ - Interference w/ prisoner bodily integrity w/out good Reason.

7 - Cruzan by Cruzan V. Dir. MC Dept of Health 497 US 261, 110 S.Ct 2841 (1990)

Causation.

    8 - Hines V. Gomez, 108 F3d 265, 268 (9th Cir 2007)

    9 - Jackson V. Sauls 206 F3d 1156, 1168 (11th Cir 2000)

    10 - Smith V. Wade 461 U.S. 30, 52, 103 S.Ct 1625 (1988)

Injuries:

    11 - Bodily disturbances § 1997 e (e) standard

    12 - Mc Guckin V. Smith 974 F2d 1050, 1060 (9th Cir 1992)

Point (III) Retaliation on access to court & Grievances

    1 - Scott V. Coughlin 344 F3d 283, 287 (2nd Cir 2003)

    2 - Crawford-El V. Brillon 538 US. 574 n* 10 (1998)

    3 - Rhodes V. Robinson 408 F3d 559 - 561 (9th Cir 2005)

    4 - Resnick V. Hayes 218 F3d 443, 449 (9th Cir 2000)

    5 - Bennett V. Goord 343 F3d 133, 138 (2nd Cir 2003)

Point (IV) Neglect of Constitutional Liability

    1 - Estelle V. Gamble 429 U.S. 97, 103 (1976)

    2 - Greason V. Kemp 891 F2d 829, 836 (7th Cir 1990)

    3 - Wulf V. City of Wichita 883 F2d 842 (10th Cir 1989)

    4 - Crawford-El V. Brillon . 523. U.S. 574, 588  (1988)

    5 - Hoskins V. Lenear 395 F3d 372, 375 (7th Cir 2005)

    6 - Bennett V. Goord 343 F3d 133, 138 (2nd Cir 2003)

    7 - Hill V. Marshall 962 F2d 1269, 1271 (6th Cir 1992)

    (B) - Statement of FACTS

    (C) - BURDEN OF PROOF

    (D) - STANDARD OF REVIEW

    (E) - Claims FOR RELIEF

    (F) - DECLARATION UNDER PENALTY OF PERJURY -

        — // —

Ⓐ   STATEMENT OF FACTS

POINT ① CLAIM UNDER DELIBERATE INDIFFERENCE

1) Defendant S. LEE, without warning or informing the prisoner for consent or refusal of treatment, inflicted serious internal injuries to plaintiff by medication overdose combine with Direct observed Therapy (DOT) resulting at first in bodily disturbance, palpitation, muscle cramps, dizziness, back pain, liver pain....which then extended into mental stress and emotional injuries: deliberate indifference standard aplied to failure to inform prisoner of adververse consequence of medication. Mc ALEESE V. OWENS 770 F Supp 355, 363 (MD. Pa 1991).

2) Performing a medical procedure against a patient's will may be considered an assault or battery. GINDRAW V. DENDLER 967 F Supp 833,840(ED Pa 1997). Extract the wrong tooth might be a" Battery by a dentist", "performing a medical procedure without informed consent is a tshnical assult and battery".

3) It is said in the First Level Appeal ~~Appeals~~ Response that:" You were seen by Dr LEE on Jun 30-2014....Dr LEE was concerned about you're not taking your meds correctly and WROTE to have your medications ...changed from KOP to DOT., he also WROTE for the new medicine Atenolol 50 mg to be taken DOT.[(and he WROTE...Had ALSO WROTE....inthe end he did not"WROTE" nothing)] All this is fallacy We can see through two documents attached (Exhib # Ⅵ ) that on the date of July 24th,2014 ( after 23 days of premeditation) that Dr S. LEE "discontinued" the Losartan 50mg prscribed by ER,s doctor TAYLOR on KOP then immediately refilled the same Losartan 50 mg on the single one Rx#156877281....on DOT (together with Doxazosin 2mg and the Atenolol on the following Rx # 156877298-1 )

1  #It was also said that:" Dr LEE 's order did not go into effect unt

2  until July 24th,2014"? what would the Medical Community think of thi?

3  The R# 9th Circuit in LOLLI V. V. COUNTY OF ORANGE 351 F3d  418,

4  415(9th Cir 2003) requires committing physicians to "exercise jud-

5  gment on the basis of substantial and professional criteria that

6  are not below the standards generally accepted in the medical com-

7  munity" Also see ESTATE OF COLE by PARDUE V. FROMM,94 F3d 254,257

8  (9th Cir.1996) (Deliberate indifference..."may be inferred based

9  upon a medical professional's erroneous treatment decision only

10  when the professional decision is such a substantial departure

11  from accepted professional judgment,practice,or standardas  to de

12  -monstrate that the persone responsible did not base the decision

13  on such a judgment."

14       4- HAYES V. SNYDER 546 F3d 516,523 (7th Cir.2008) Objective

15  of pain is not necessary/self reporting may be the only evidence

16       5- One federal Appeals Court has recently held that the ser

17  -riousness of a medical need is not determined exclusively on the

18  symptoms presented....but on the alleged harm to the rprsoner.

19  MATA V. SAIZ 427 F3d .745 753 (10th Cir.2005)

20       6- The chosen course of treatment....was chosen in conssci-

21  ous disregard of an excessive risk to _the prisoner'sÑ Health"

22  TOGUCHI V. CUNG 391 F3d at 1059

23

24  POINT II VIOLATION OF DUE PROCESS CLAUSE By interference with

25        prisoner bodily integrity without good reason.

26       7- The Common Law Right to refuse treatment is part of

27  "Informed Consent" Courts have held that the Constitution protect

28  prisoner's right of informed consent. CRUZAN by CRUZAN V. DIr MO

Dept of health, 497 US. 261-67

CAUSATION?

8- Dr S. LEE LOST HIS JOB IN CHUCKEWALA Prison UNIT HEALTH CARE* in the early 2012 then transferred (or rehired) to CNC East Hospital Clinic in the late 2012: He is the tool in the hands of CEO T. MACIAs in the taking RETALIATION on plaintiff who has the reputation of sui suing Centinela prison's Counselors, the Med'l Techn. Assistants and the three dentists with acremonious langage (because of contineous denial of his grievances.

In HINES V. GOMEZ 108 F3d 265, 268 (9th Cir.1997)( Jury could infer Retaliation motive from evidence from prison staff that the plaintiff had a reputation of "complaining" or"Whining" from from his having filed many grievances and from having told a defendant he woul would be filing  a grievance against him.)

9- The violation must have been the "proximate cause" of the injury means that "except for the Constitutional Tort,such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the acts or omissions in issue." JACKSON V. SAULS 206 F3d 1156,1168(11th C.200 SMITH V. WADE 461 US 30 ,52, 103 S.Ct 1625 (1983)

INJURIES:

10- direct Observed Therapy (DOT) added to overdose meds caused bodily disturbances Sect. 1997 e(e) Standard; then extended to stress depression and fear of uncertain future.

11- NcGUCKIN V. SMITH 974 F2d 1050,1060 (9th Cir.1992) Similar to the Mc GUCKIN case, the plaintiff suffered palpitations,dizziness muscle cramps,stomach-upsets,back pain and liver pain....IN SHORT, ILLNESSES THAT "significantly affect the "daily activity" and cause significant medical risks

a/ Plaintiff did not have"serious medical need" at the time Dr. LEE made the filling of reMeds under DOT on July 24th, 2014.

b/ This CMCUHC "IRREGULAR Physician"(not the assigned PCP) made the plaintiff become seriously sick.

c/ This defendant Scott LEE"sheme and premeditation conduct" amount to deliberatate indifference.

12. Deprivation of substantive due precess= DOT is a medical method of forcing inmate plaintiff to swallow the 'overdose meds' prescribed by Dr. S, LEE

## Point III RETALIATION ON ACCESS TO COURT AND SUBMITTING GRIEVANCE APPEALS.

The Grievance submitted to Calif. Inspector General was a protected conduct. The Request to bring Dr. S. LEE to the Cal. Medical Board, though discourteous, was also protected act on exercise of his right to petition government for redress of grievance under the 1st Amend. Scott V Coughlin 344 F3d (2nd Cir 2003)

Defendant T. Macias took adverse action on plaintiff by falsification of document to cover up for defendant S. LEE and then incriminating *falsely inculpating* plaintiff of illicit intravenous drug use distorting facts, instigation of hate with deliberate indifference

Defendant J. LEWIS refused to correct subordinate Scott LEE, instead pushed the wrongdoing further by the decision "no change or modification is needed by this institution" = another deliberate indifference by refusing to protect prisoner from risk of serious harm

Therefore there was causal connection between protected speech with the "proximate cause" of combined adverse actions, which at the end did not reasonably advance the legitimate correctional Goal. Rhodes V. Robinson 408 F3d 559.

Who *doesn't* wouldn't know that there is an inter-related system of RETALIATION between one prison staff / or Unit Health Care with another prison's. (e.g. loss of all electrical appliances at the new prison's R&R, or transfered to hostile environment for punishment of his harsh grievances at a previous prison.) That's what is called "Remote motive" of actual Retaliation.

Now, with it CDCR's computer Intranet, any prisoner's harmful, acrimonious grievance will be listed all over to the most remote corner of the state so that this stigmatized prisoner will be caught under reprisal of co-related Retaliation.

To avoid continuous allegations of oppression, prisoners are then transfered to another 'player to kick the ball' without

obvious reason for claiming in a Lawsuit.

1     Therefore what CMC West - Unit Health care was

2 doing was targetting plaintiff based mostly on 'Remote motive'

3 for Retaliation - Exhibit # IX on 'Remote motive'.

4 The reason why such retaliation offends the Constitution is

5 that it threaten to inhibit exercise of the protected Rights

6 Crawford - EL. V. Brillon 523 US 574, 588 n*10, 1185.S.Ct 1584(1988)

7 Hoskins V Lenear 395 F3d 372, 375 (7th Cir 2005) (Per Curiam)

8 "Prisoners are entitled to utilize available grievance proce-

9 dure w/out threat of Recrimination -"

10     But "The action [of Retaliation] did not reason-

11 ably advance a legitimate penological goal - Rostrick V.

12 Hayes. 213 F3d 442, 449 (9th Cir. 2000)

13     ACTUAL INJURIES CAUSED BY RETALIATION

14     1)- The combined actions from defendants T. Macias

15 and J. Lewis are impeding the plaintiff from exercising his

16 First Amend. Constitutional Right is the greatest among the

17 injuries by deliberate indifference exerted on plaintiff.

18 Bennet V. Goord 343 F3d. 133, 138 (2nd Cir. 2003) (Direct

19 evidence of Retaliation motive is not required where

20 circumstantial evidence is sufficiently compelling.)

21     2)- Once the fabricated Progress Notes had satu-

22 rated our intellect, we no longer see the two sides of

23 things. We'd been brainwashed and we would easily

24 believe every expedient details presented by CEO. Macias

25 and used to conspire to plaintiff ruin, until the day we'd

26 learned that all these Progress Notes' exposés were nothing

27 nothing but lies and untrustworthynesses-

28

19

## CEO- T. MACIAS FABRICATED THE PROGRESS NOTES.

1. It would not be prudent to devotedly refer to
2. the allegations from this "Chronic care follow-up/Progress
3. Note" against the plaintiff: it contains a great number of
4. false assertions (attested by other documents when/if required)
5. 1)- The notation "on Jun 02nd 2014 notes bronchitis and
6. given Doxycycline for 14 days w/ complaint of cough w/ yellow
7. green plegm" was given by PCP. Dr Guiang, not by Dr. S. LEE
8. 2)- In one single 15-minute visit Dr. LEE can make
9. "Objective/observations, vital signs and a whole Chronic
10. medical problems" without the help of MRI or Ultra-sound
11. or the use of stetoscope is extraordinary for a Dr of Medicine
12. 3) Why the Progress Note from Dr. Guiang who provided
13. care to plaintiff for more than two years is so short com-
14. pared to Dr. LEE's fifteen-minute visit?
15. 4)- Plaintiff has in his hands more than a dozen of
16. Lab Test Reports since year 2005 to now, none of them claims
17. any sign of Hepatitis C, genotype 1, And his Medical Records
18. of 18 years of emprisonment there is only one time "Refuse of
19. a 2nd Colonoscopy" but never had "Refuse treatment of Hep. C"
20. 5)- In one single visit of 15 minutes, Dr. LEE had learned
21. that "plaintiff is a poor historian (?) and there is question of
22. compliance w/ medication" while a dozen of care providers don't
23. know/or didn't know nothing about these inadequacies.
24. 6). And the Progress Notes are attributed "Digitally Authen-
25. ticated"= Nowaday one can delete, and then insert a whole
26. new paragraph into an Electronic (computer) Filing; one can make
27. people look fatter or slimmer at will; can make someone's right
28. side belly looks inflated as if having cirrhosis /or Hep. C -

*How wrong it was to think that the* "*Defendants* were solely involved in Reversing plaintiff grievances

1 appeals, their action cannot constitute the "unnecessary

2 and wanton infliction of pain" that is required to establish

3 deliberate indifference - *Estell V Gamble 429 US. 104 (1976)*

4      3) To cover-up defendant's Scott LEE's malicious intents

5 to harm plaintiff with serious internal organs injuries even

6 death if the seame were not early discovered... This Reta-

7 liation is supported by a "suspicious Timing" of producing (

8 (made-up) the doctors' Progress Notes, of which the Dr. LEE's is

9 a compilation of fallacious informations. *Bennett V Goord*

10 *398 F3d. 133, 138 (2nd Cir. 2003) (Direct evidence of Retaliation*

11 motives is not required when circumstantial evidence is

12 sufficiently compelling.)

13      4) Plaintiff suffered about 10 bags of corporal distur-

14 bances by internal injuries then followed by mental and

15 emotional injuries such as stress & fear of uncertain future.

16      5) Fabricated evidence to incriminate plaintiff of

17 "illicit intravenous drug use".

18      6) Sufference of instigated hate and deep seated Resent-

19 ment of PCP. Dr. Cuiang (by def. T. Macias) and of Emergency

20 Room's Dr. Tayler (by def. T. Lewis) towards plaintiff.

21

22 <u>Point IV  SUPERVISOR'S PERSONAL INVOLMENT IN</u>

23      <u>DELIBERATE INDIFFERENCE & NEGLECT CONST'L LIABILITY</u>

24 ① Supervisors are responsible on following theories :

25 ① - supervisor directly (involved) participate in the violation.

26 ② - supervisor learned about the violation of your Rights and
       failed to do anything to fix the situation.

27 ③ - supervisor created a policy or custom in allowing or

28      encouraging the illegal actions.

21

④ - Supervisor failed to adequately traine or supervise his/her subordinates-

1  Walden v. Crossby 450 F3d 1231 (11th Cir. 2006)

2  Hardy v. Dist. Columbia, 601 F. Supp 2d 182 (DC. Dist. 2009)

3    But since S.Ct's decision in

4  Aschroft v. Iqbal, 129 S.Ct 1937 (2009) Courts are divided

5  on prisoners ability to sue supervisors who ignore information

6  about a Constitutional wrongdoing, as opposed to participating

7  in the action him/herself.

8    Here both defendants T. Macias and J. Lewis had

9  participated in the actions against plaintiff herself & himself.

10    ① After ten days of swallowing noxious overdose meds

11  under DOT. "inmate must rely on prison authority to treat

12  his medical needs" Estell v. Gamble 429 US (1976). Supervisor

13  will not refuse to respond effectively to substantial threats

14  or risks of serious harm W/ such a deliberate indifference

15  in face of resultant pain and risk of permanent injures of to

16  plaintiff's internal organs FN--- But defendant J. Lewis coldly

17  declared in his conclusive order-: "No change or modification

18  is needed by the Institution." The ensued consequences are

19  detrimental to the suffering plaintiff = The CME-unit Health

20  care hence continues administration of the "Noxious overdose

21  meds" for one year more, till July of 2016 while the plaintiff

22  had requested for discontinuation since may 13th - 2015. be-

23  cause of aggravated pain at right side kidney and continuous

24  sensation of fatigue.

25    ② "---[A] supervisor can be held liable under §1983

26  when a reasonable person in the supervisor's position would

27  FN:

28  In 1926, the entertainer died of internal infection from one punch into his belly → Houdini.

29

have known that his conduct infringed the constitutional Rights of the plaintiff --- and his conduct was causally related to the const'l violation committed by his subordinate -- [Dr. S. LEE]" Thus def- J LEWIS is culpable under Gresson V. Kemp 891 F2d 829, 836 (11th cir 1990) Also, a supervisor "who implements and the policy and monitores its progress" could be held liable if he ignores his own "policy and procedures" (of consent/refusal treatment) Wulf V. city of Wichita 883 F2d 842, 864 (10th cir 1989) (Holding that personal liability under §1983 can be imputed if it can be shown that the defendant caused the alleged violatn of plaintiff's Rights.

[3] For def- J. LEWIS, deputy Director of policy & Risk Management services to dream about a --- doses appropriate to plaintiff's habitus --- and "No record (plaintiff) suffered side-effects --- with Direct Observed Therapy" is out of the sphere of his professionality -

[4] The US Supreme Court has held that punitive damages should reflect ① the "reprehensibility of the defendant's conduct; ② A reasonable Relationship to the harm the plaintiff suffered and ③ The presence (or absence) of sanctions" (e.g. criminal penalties that state law provided for comparable conduct) Hill V. Marshall 962 F2d 1209, 1271 (6th cir. 1992)

23

1    © ~ THE BURDEN OF PROOF

2    1 ~ Under Farmer, prison officials do not have to
3    know that you have been harmed, they only have to know that
     there was "substantial risk of serious harm."

4        If there are unsafe conditions that clearly pose a
5    serious threat, you can bring a claim before actual harm is
6    suffered (e.g. Like excess of drugs can cause damage to the
7    liver tissue, hence causes Hepatitis C or cirrhosis.)

8        Claim of Constitutional Rights Violations concerning
9    medical care "deliberate indifference" is the legal standard
     that must be met before a federal court will intervene.
10   Farmer V. Brennan, 511 US. 835, 837-38 (1994)

11       2 ~ Court Appeals 5 (La) 2001. To establish a case or
12   controversy sufficient to give a Fed. Court jurisdiction over
13   their claims, plaintiffs must satisfy three criteria: ① That
14   they have suffered, or about to suffer an injury in fact;
15   ② That there is a causal connection between the injury and
     the conduct complained of; and ③ That there is likely, as
16   opposed to merely speculative that injury will be redressed
17   by favorable decision; if one of these elements is absent
18   plaintiff has no standing in federal court. USCA. Const Art. 2
19   § 3, close 1. Okpolobi V. Foster 244 F3d 405.

20       3 ~ The violation must have been the "proximate
21   cause" of the injury means that "except for the Constitu-
     tional Tort, such injuries and damages would not have occur-
22   red, and further that such injuries and damages were the
23   reasonably foreseeable consequences of the acts or omissions
24   in issues." Jackson V. Sauls 206 F3d 1156, 1168 (11th Cir. 2000)
25   Smith V. Wade 461 U.S. 30, 52, 103 S. Ct 1625 (1983) (The
26   defendant acted with reckless indifference to plaintiff
     rights, with ill will, and a desire to injure, and malice.)

27

28

## Ⓓ - STANDARD OF REVIEW

1. Generally an appeal need not set forth legal theories or each element of the legal claim, but it must include informations to put prison staff on notice of what happened, the nature of the issue, and the relief being sought.

2. Clear / or certain nature of insufficiency Court Appeals 8th (MO) 2001 - Complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond reasonable doubt that plaintiff can prove NO set of facts in support of a claim entitling him to relief. Rule 12(b)(6) Young V. City of St Charles (Missouri) MO 244 F3d 623.

3. Dismissal for failure to state claim is appropriate only where the complaint lacks a cognizable legal theory. Fed. Civ. P. Rule 12(b)(6) 28 USCA.

4. To comply w/ pleading requirement, the complaint must give the defendants fair notice of what the plaintiffs claim is and its grounds upon which it rests. Fed. Civ. P. Rule 12(b)(6)

3. Where the plaintiff appears PRO SE the court must construe the pleading liberally and afford the plaintiff any benefit of the doubt. Karim Panahi V. 1 APD, 839 F2d The Rule of Liberal Construction    (9th Cir 1988) is "particularly important in civil Rights case". Ferdik V. Bonzelet 963 Fed. 1258 (9th Cir. 1992)

When resolving to dismiss a motion for failure to state claim court may not generally consider materials outside the pleading. Schneider V. Cal. Dept Corrections 151 F3d 1194 (9th Cir 1998). However Court may consider documents / Exhibits "where contents are alleged in a complaint ..."

1    (E)- CLAIMS FOR RELIEF

2    Plaintiff respectfully prays this Court

3    ①- Declare that the acts and omissions described

4    herein violate plaintiff's Rights under the Constitution

5    and Laws of the United States.

6    ②- The recurrence of a scheme aiming to inflict

7    danger of irreparable harm and internal injuries urges

8    the plaintiff to seek for an urgent Court Order compelling

9    the Defendants to annul, to abandon the scheme aiming

10   in inflicting chronic Hepatitis C on plaintiff: The Lab

11   Test result of the date July 29-2015 points out that

12   Defendants are still persisting in the plot until today.—

13   ③- Enter Preliminary Injunction to Defendants to

14   secure the plaintiff from frequent transfers and to secure

15   plaintiff's future from harassment, from reprisal or aggres-

16   sive, hostile environment.

17   ④- Enter Judgment in favor of plaintiff for

18   nominal and compensatory damages, as allowed by law

19   against each Defendant jointly / or severally.

20   ⑤- Order such additional Relief as this Court

21   deem just and proper.

22   (F)- VERIFICATION.

23   Pursuant to 28 USC § 1746, I declare and verify under

24   Penalty of perjury under the laws of the United States of

25   America that the foregoing is true and correct.—

26   Executed on Apr. 20, 2016.

27                     TIEN MINH NGUYEN - CDCR# P12755
                       California Medical Facility

28                     PO Box 2500 - Dorm C 115L.
                       Vacaville, CA 95696-2500 -



1 benefit of the doubt. Karim Panahi V. LAPD. 839 F2d (9th cir 1988)

2     The rule of liberal construction is "particularly important

3 in civil Rights case" Ferdik V. Bonzelet 963 Fed. 1258 (9th cir 1992)

4     When resolving to dismiss a motion for failure to state claim court may not generally consider materials outside the pleading

5 Scheider V. Cal. Dept. Corrections, 151 F3d 1194 (9th cir 1998)

6 However, court may consider documents or exhibits "whose con-

7 tents are alleged in a complaint and those authenticity no party

questions."

8     (E) CLAIMS FOR RELIEF

9     Plaintiff respectfully prays that this Court

    ①-Declare that the acts and omissions described herein

10 violate plaintiff's Rights under the Constitution and Laws of

11 the United States-

12     ②-The recurrence of a scheme aiming to inflict dan-

13 ger of irreparable harm and internal injuries urges the plaintiff

14 to seek for an urgent court order compelling the defendants to annul, to abandon the scame aiming in inflicting chronic

15 Hepatits C on plaintiff: The Laboratory Test Result of the date

16 July 29-2015 points out that defendants are still persisting in

17 the plot.

18     ③-Enter judgment in favor of plaintiff for nominal

19 and compensatory damages, as allowed by law, against each

20 defendant jointly and/or severally-

21     ④-Order such additional Relief as this court deem just and proper-

22     (F) VERIFICATION

23     Pursuant to 28 USC §1746, I declare and verify

24 under penalty of perjury under the Laws of the United

25 States of America that the foregoing is true and correct.

26 Executed on Apr. 05th, 2016

27     TIEN MINH NGUYEN

28     CDCR # P-12755
    California Medical Facility
    P.O. Box 2500 -Dorm C-115L
    Vacaville, CA 95696-2500

26

# ATTACHEMENTS TO THE COMPLAINT
## CASE NUMBER : 2:15-CV-07600-PSG(AS)

Pages

1 - Motion for Court Order To effect the ................................. 1
   Summons to the Defendants ................................ 3
2 - Memorandum of Points and Authorities ............ 14

3 - The Exhibits :-
   I - Exhaustion of Administrative Procedures ........ 13
   II - Prisoner Request for Medical Records Files ........ 3
   III - The Three Doctors' Progress Notes ................ 8
   IV - The 'Regular' Primary Care Provider (PCP) ........ 1
   V - Issuance of Doxycycline on Jun-02-2014 ........ 1
   VI - The 24th day in Filling 'overdose meds' on DOT  2
   VII - Continuance of meds Refill until Jun. 12, 2016   2
   VIII - The direct causation of Retaliation .............. 1
   IX - The Remote causation of Retaliation ............ 33
                                                    _____
                                                    82 pp.

TIEN M. NGUYEN  CDCR# P 12755
California Medical Facility
P.O. Box 2500  -  Dorm C. 115L
Vacaville, CA 95606 - 2500

STATE OF CALIFORNIA
**PATIENT/INMATE HEALTH CARE APPEAL**

Document Effective Communication
DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDCR 602 HC (REV. 04/11) *PAGE 2.1*

Side 1

| STAFF USE ONLY | | Institution: CMC HC 14048853 CMC-SO 14000765 | Loc: | Category: A-8 |
|---|---|---|---|---|
| Emergency Appeal | ☐ Yes  ☐ No | | | |
| Signature: | Date: | FOR STAFF USE ONLY | | |

You may appeal any California Prison Health Care Services (CPHCS) decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY.

| Name (Last, First): NGUYEN, TIEN | CDC Number: P12755 | Unit/Cell Number: G23 / 27 Low | Assignment: N/A |
|---|---|---|---|

State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):
NOXIOUS OVERDOSE MEDS PRESCRIBED BY Dr. LEE MD, SC.

A. Explain your issue (if you need more space, use Section A of the CDCR 602-A): ATENOLON 50 mg + DOXAZOSIN 2 mg + LOSARTAN POTAS. 50 mg ALL FORCED TO BE TAKEN IN 1 SINGLE TIME DAILY GIVE I/M SEVERE BACK PAIN, PALPITATION, DIZZINESS, CRAMPS + PAIN AT LIVER EMPLACEMT.

B. Action requested (if you need more space, use Section B of the CDCR 602-A): RESPECTFULLY REQUEST URGENT INVESTIGATIONS ON Dr. LEE'S EXPERTISE AND/ OR Dr. LEE MD's LATEN CRIMINAL INTENT PLS TURN IN THIS CASE TO MED. BOARD CALIF. SACRAMTO CA 95815 BEFORE I/M DOES SELF.

☐ Supporting Documents: Refer to CCR 3084.3.

List supporting documents attached (e.g. Trust Account Statement, CDCR 7410, Comprehensive Accommodation Chrono, CDCR 7362, Request for Health Care Services, etc.):

RECEIVED
AUG 12 2014
Health Care Appeals
RECEIVED
SEP 30 2014
Health Care Appeals
RECEIVED
OCT 2014
Health Care Appeals
RECEIVED
DEC 2014
HC APPEALS

☒ No, I have not attached any supporting documents. Reason: Dr. LEE MD's PRESCRIPTIONS ON DATE July 24-2014 IS ON CMC WEST CLINIC'S COMPUTER FILES

Patient/Inmate Signature: *Nguyen Tien*    Date Submitted: 8/8/2014

☐ By placing my initials in this box, I waive my right to receive an interview.

---

**C. First Level - Staff Use Only**          Staff – Check One: Is CDCR 602-A Attached? ☐ Yes  ☒ No

This appeal has been:

☐ Bypassed at the First Level of Review. Go to Section E.

☐ Rejected (See attached letter for instruction) :  Date: _____  Date: _____  Date: _____  Date: _____

☐ Cancelled (See attached letter):          Date: _____

☒ Accepted at the First Level of Review

Assigned to: CMC-MD          Title: _____          Date Assigned: 8/12/14  Date Due: 9/23/14

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: 9/12/14          Interview Location: CMC - WEST

Your appeal issue is: ☐ Granted  ☐ Granted in part  ☒ Denied          ☐ Other:

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: J. HAAS, MD, CP8?          Signature: (signature)          Date completed: 9/12/14
(Print Name) Barber, MD, CP8?  Title: Prs

Reviewer: CP8S          Title: _____          Signature: (signature)

Date received by HCAC: 9/22/14          HCAC Use Only Date mailed/delivered to appellant: 9/22/14

STATE OF CALIFORNIA

PATIENT/INMATE APPEAL

CDCR 602 HC (REV. 04/11)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

...ide 2

**D.** If you are dissatisfied with the First Level response, explain the reason below, attach supporting documents and submit to the Health Care Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

BEG YOUR PARDON! BUT = ISSUE TYPE: D, LEE MD MALPRACTICE//ACT'N REQ'D: INVESTIGATION ON
CRIM. INTENT. — BEFORE ER'CARE I/M PLAINTIFF ALREADY TAKEN SOLARTAN 12 mg. ON NIGHT
OF CRISIS THE RN ON DUTY TOOK BLOOD PRESS. TWO TIMES AND MUMBLED "98...TOO HIGH".
ER'S DOCTOR "DOUBLE UP" SOLARTAN TO 50 mg (Jun 27). ON June 30, BLOOD PRESS 175...91, Dr. LEE
MD QUADRUPLED TOTAL DOSE TO 100 mg. IS REVIEWER SAYING ER'S DOCTOR DOSE NOT APPROPRIATE!
— IN MEDIC. BOARD CAL'S QUESTIONAIRE THERE IS A QUERY: "HAS PATIENT BEEN TREATED

Patient/Inmate Signature: _Sim Nguyen_    Date Submitted: SEPT 28-2014

**E. Second Level - Staff Use Only**    Staff – Check One: Is CDCR 602-A Attached?  ☒ Yes  ☐ No

This appeal has been:

☐ By-passed at Second Level of Review. Go to Section G.

☒ Rejected (See attached letter for instruction):  Date 10/6/14  Date: ___  Date: ___  Date 12/5/14

☐ Cancelled (See attached letter):  Date: ___

☒ Accepted at the Second Level of Review

Assigned to: S. Mozingo    Health Care Appeals Coordinator Date Assigned: 10/22/14 Date Due: 12/5/14

Second Level Responder: Complete a Second Level response. Include interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: N/A    Interview Location: N/A

Your appeal issue is:  ☐ Granted  ☐ Granted in part  ☒ Denied  ☐ Other:

See attached letter. If dissatisfied with Second Level response, complete Section D.

Interviewer: N/A    Title: ___    Signature: ___    Date completed: ___
(Print Name)

Reviewer: TERESA MACIAS  Title: CEO  Signature: _Teresa Macias_
(Print Name)

Date received by HCAC: 12/4/14    Office to Third Level Appeals, Building C    HCAC Use Only
                                    P.O. Box 588500, Elk Grove, CA 95758    d to appellant 12/4/14

**F.** If you are dissatisfied with the Second Level Review. It must be received within 30 ca___    and submit by mail for Third
California Prison Health Care Services, P.O.___    Level Appeals – Health Care,
the CDCR 602-A.    more space, use Section F of

BROKEN HEARTED TO SEE SUCH EMINENT LEADERS (CHIEFS) MAKE FLAGRANT ERRORS: DEVIOUS-
LY PUT TOGETHER Dr. LEE w/ THE ER DOCTOR AS ONE SAME ONE; DISTORTING ALL THE FACTS THAT I/M HAD
DESCRIBED + PRESENTED IN CDCR 602 HC. PERHAPS SLR HAD NO TIME TO READ THE WHOLE FILE OR
BLINDLY TRUSTING + BELIEVING IN THE STATEMENTS DRAFTED BY SUBORDINATES AS ABSOLUTE TRUTH.
★ ERROR OF JUDGMENT BY TAKING Dr. LEE'S MALPRACTICE INTO CMC-HC DIV'S RESPONSIBILITY !

Patient/Inmate Signature: _Sim Nguyen_    Date Submitted: DEC ___ 2014

**G. Third Level - Staff Use Only**

☐ Rejected (See attached letter for instruction):  Date: ___  Date: ___  Date: ___  Date: ___

☐ Cancelled (See attached letter):  Date: ___

☒ Accepted at the Third Level of Review

Your appeal is  ☐ Granted  ☐ Granted in part  ☒ Denied  ☐ Other: ___

See attached Third Level response.    Third Level Use Only
                                    Date mailed/delivered to appellant JAN 29 2015

**Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because: State reason. (If withdrawal is conditional, list conditions.)

_____

_____

Patient/Inmate Signature: ___    Date Submitted: ___

Print Staff Name: ___    Title: ___    Signature: ___    Date: ___

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
· CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

IAB USE ONLY | Institution/Parole Region: | Log #: | Category:

CMC HC 1408953

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.

WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): NGUYEN, TIEN M. | CDC Number: P12755 | Unit/Cell Number: G 23 / 27 Low | Assignment: NA |

☒ Continuation of CDCR 602, Section A only (Explain your issue): --- BY ANOTHER PROFESSIONAL
FOR THE SAME CONDITN.?? I/M DIDN'T WANT OTHER DRS INVOLVED (BUT NOW
SINCE YOU ASK) THAT'S REASON WHY ON 8/8/14 VISIT I/M DIDN'T COMPLAIN
OF PALPITATION, CRAMPING, ETC.--- TO PCP, Dr GUIANG. THOUGH I/M HAD
COMPLAINED MANY TIMES TO 'DOT WINDOW NURSE' DURING 7/25 TO 8/10/14
-IN CHEM.TESTINGS ON MICE OR RHESUS MONKS, MOST EXPERIENCES TAKE A FEW
WEEKS/MONTHS. HERE Dr LEE MD WANTS TO CHECK EFFECT OF 3 KINDS HI-DOSE
HYPER TENTN DRUGS (DAILY DOT) FOR PERIODS OF TIME 7/24/14 TO 7/23/2015
—HOW DOES Dr LEE MD KNOWS THAT THIS I/M IS NOT TAKING MEDS CORRECTLY
WHILE SOME TWO DOZENS OF OTHER DOCTORS OF THE CDCR DON'T.
—I/M HAD EXPLAINED AT INTERVIEW W/ Dr HAAR MD THAT MEDS ON KOP
CAN BE TAKEN ONE KIND AT A TIME, SPREADED INTO MANY DIFFERENT
HOURS OF THE DAY & NIGHT — BESIDES Dr GUIANG MD HAD DROPPED THE
LOSARTANT DOWN TO 10 mg. CAN NO LONGER COMPLAIN HERE NOW.
—IF YOU WERE TO ADVOCATE FOR Dr LEE MD, BETTER ADVISE HIM
TO GIVE TO I/M A SINCERE, ORAL, NON RECORDED, FACE TO FACE
APOLOGY- THEN THIS I/M'D DROP THE CASE, SHRED THE FILE PROMISES
—— [REWRITTEN ON CDCR 602-A (08-09) GREEN PAPER TO
CONFORM W/ APPEALS PROCEDURES]

Inmate/Parolee Signature: _____ Nguyen _____ Date Submitted: Oct 22. 2014

RECEIVED
OCT 22 2014
Health Care Appeals

RECEIVED
DEC 2014
HC APPEALS

COMPLETED
OTLA-HC
JAN 29 2015
HC APPEALS

B. Continuation of CDCR 602, Section B only (Action requested): _____

Inmate/Parolee Signature: _____    Date Submitted: _____

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)                                                                                    Side 2

D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):



Inmate/Parolee Signature: _____        Date Submitted: _____

F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response): Dr. LEE'S NOXIOUS OVERDOSE HYPERTENSION
MEDS PRESCRIPTION WAS CARRIED OUT OF HIS OWN ACCORD, OF HIS OWN VOLITION / OR an ORDER OF CMC-HC?
I/M HAD OPENED A LARGE WINDOW FOR Dr LEE TO AVOID LICENSE SUSPENDED OR MAY BE WORSE, BUT
CMC-HC-SLR OSBTRUCTED THE PEACEFUL SETTLEMENT. ✱ CONSIDERING THAT MEDS DOSING MUST BE PRO-
PORTIONAL W/ PATIENT'S BODY WEIGHT (ONLY 121 LBS) IS Dr LEE'S DOSING ABSOLUTELY APPROPRIATE. !
✱ ON 7/28/14 I/M SUBMITTED a 7362 BECAUSE STATED FEELING ILL. HOWEVER THIS 7362 STAYED AT
TRIAGE OFFICE UNTIL 8/4/14 = RN NEEDED SOME DISCUSSION + CLARIFICATION BEFORE TURN IT INTO
CLINIC. MEANTIME I/M WAS KEPT TAKING DOT UNTIL PCP Dr GUIANG VISIT ON 8/8/14
✱ THE 1ST PARAGRAPH OF SLR's RESPONSE STATES THAT I/M "REQUESTING INVESTIGATIONS ON YOUR PCP
EXPERTISE AND HIS LATEN CRIMINAL INTENT" THIS IS INSANE AND CALUMNIOUS. THE ISSUE ON APPEAL
IS "Dr LEE PRESCRIBED NOXICUS OVERDOSE MEDS" THE STAFF MEMBER WHO TRICKED YOU + MADE YOU SIGN
THIS DOCUMENT MUST BE PUNISHED OTHERWISE THE JUSTICE WOULD THINK THAT CMC-HC- DIV STRIVES
TO JUSTIFY FOR Dr LEE MD. AND TO TIE-UP PCP Dr GUIANG TO THE CASE, THUS, INSTIGATING
DISCORD + HATRED BETWEEN PCP Dr GUIANG AND THE PATIENT FOR THE REST OF HIS PRISON
LIFE. TERRIBLE EFFECT ON I/M WELFARE FROM NOW ON. IF HIGHER AUTHORITIES WOULD
NOT TRICKLE DOWN SOME REMEDY. ✱ PHYSICAL ILLNESS SYMPTOMS CAUSED BY NOXIOUS OVED-
DOSE FROM Dr LEE DOT still LINGERING / RESPECTFULLY SUBMITTED.

Inmate/Parolee Signature: _____        Date Submitted: DEC-10-2014

I wish to complain about the individual named below. I understand that the Medical Board does not assist citizens seeking return of their money or other personal remedies. I am, however, submitting this information so that it may be determined whether disciplinary action against this practitioner's license should be considered.

Check one:

☐ Physician (M.D.)  ☐ Podiatrist (DPM)  ☐ Physician Assistant (PA)  ☐ Registered Dispensing Optician (RDO)  ☐ Midwife  ☐ Unlicensed Provider

## COMPLAINT REGISTERED AGAINST

Please Print or Type

Name: _____
             (Last Name)                  (First Name)            (M.I.)

Office/Facility Name: _____ License No. (If known): _____

Street Address: _____
           (Address)          (City)        (State)       (Zip Code)

Phone Number: ( )

Has the patient been examined/treated by another professional for this same condition?
☐ No  ☐ Yes   If yes, provide the name and address on the Authorization for Release of Medical Information

Reason for Treatment: _____

Date(s) of Treatment: _____

## DETAILS OF COMPLAINT
### (Attach additional sheets if necessary)



**ATTACHMENT COPY**

# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES

**Date:**   10/6/2014                                      REJECTION NOTICE

**To:**   NGUYEN, TIEN (P12755)
G  023 1000027L
California Men's Colony
P.O. Box 8101
San Luis Obispo, CA 93409-8101

**Tracking/Log #:**    CMC HC 14048553

It has been determined your appeal submitted does not comply with appeal procedures established in the
California Code of Regulations (CCR) Title 15, Article 8, and is being rejected and returned to you for the
following reason(s):

**Missing Necessary Supporting Documents:** CCR, Title 15, Section 3084.6(b)(7) states, "The appeal is missing
necessary supporting documents as established in section 3084.3."
- You are attempting to submit your appeal for a Second Level of Review (SLR) however your First Level
of Review (FLR) is missing. You need to attach your FLR to the appeal and resubmit.

**Not on Approved Forms:** CCR, Title 15, Section 3084.6(b)(14) states, "The inmate or parolee has not submitted
his/her appeal on the departmentally approved appeal forms" and Section 3084.2(a) indicates you are limited to
the space provided on the CDCR 602-HC, Patient/Inmate Health Care Appeal, and one CDCR 602-A,
Inmate/Parolee Appeal Form Attachment (08/09).
- CDCR 602-A is not produced on pink paper.  It is produced on green paper.  Resubmit using the correct
form
- If you are dissatisfied with your SLR you should complete section D of the CDCR 602-A.

For your appeal to qualify for processing, you are advised to take the necessary corrective action provided in this
notice and resubmit the appeal within 30 calendar days.

Mozingo, S.
Health Care Appeals Office
California Men's Colony

RECEIVED

OCT 2 2 2014

Health Care Appeals



Rejection Note: Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the
timeframes, 30 calendar days, as specified in CCR 3084.6(a) and CCR 3084.8(b).

***PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE***   EXHIBIT



**33**

ATTACHED TO SLA

STATE OF CALIFORNIA
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print)    (LAST NAME)    (FIRST NAME) | CDC NUMBER: | SIGNATURE |
|---|---|---|
| NGUYEN, TIEN | P12755 | |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM ___ TO ___ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| G23 / 27 Low | NA | | RESUBMIT HC 14048553 |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

- PLEASE AFFIRM THAT THE "REJECTION NOTICE" DATED 10-6-2014 (FOR REASONS = MISS-
SING SUPPORTING DOCUMENTS & NOT ON APPROVED FORMS) IS IN FACT A PROCEDU-
RAL REJECTION BY HC APPEALS OFFICE - HC APPEALS COORDINATOR, NOT BY THE SECOND
LEVEL REVIEW. THEREFORE I/M DOES NOT HAVE TO COMPLETE SEC'D OF CDCR 602 A.
- PLEASE CONFIRM THAT ALL I/M HAS TO DO IS TO REWRITE CDCR 602 A ON GREEN PAPER
AND PROVIDE SUPPORTING DOCUMENTS and RESUBMIT TO SECOND LEVEL APPEALS HC.
- RESPECTFULLY -

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☒ SENT THROUGH MAIL: ADDRESSED TO: MOZINGO, S. HC APPEALS COORDINATOR CMC   DATE MAILED: 10·16·14
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? (CIRCLE ONE)  YES  NO |
|---|---|---|---|
| C. Morris | 10-16-14 | C. M | |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: (CIRCLE ONE)  IN PERSON  BY US MAIL |
|---|---|---|
| MOZINGO, S. - HC APPEALS OFFICE | 10-16-14 | |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| S. Mozingo | 10/20/14 | S. Mozingo | 10/20/14 |

CDCR 602A is a form prepared on green stock paper.
Please follow instructions on rejection notice, and
resubmit

## SECTION C: REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| | |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

RECEIVED
OCT 2 2 2014
Health Care Appeals

RECEIVED
DEC 1 5 2014
HC APPEALS

Distribution: Original - Return to Inmate/Parolee; Canary - Inmate/Parolee's 2nd Copy; Pink - Staff Members Copy; Goldenrod - Inmate/Parolee's 1st Copy.



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



**Date:** JAN 29 2015

**To:** NGUYEN, TIEN (P12755)
California Men's Colony
P.O. Box 8101
San Luis Obispo, CA 93409-8101

**From:** California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :**   CMC HC 14048553

This appeal was reviewed by Inmate Correspondence and Appeals Branch (ICAB) staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

## DIRECTOR'S LEVEL DECISION:

Appeal is denied. This decision exhausts your administrative remedies.

## APPEAL REQUESTS:

You are requesting:
- Urgent investigations on Dr. Lee's expertise and/or Dr. Lee's latent criminal intent.
- To refer this case to the Medical Board of California.

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:
- You have received ongoing Primary Care Provider (PCP) follow up evaluation and treatment to January 22, 2015, for your history of hypertension and migraine headaches. Progress notes indicate you have a plan of care in place and the PCP has discussed your plan of care with you.
- You are prescribed medications in doses appropriate to your body habitus (physique or body build) and your disease processes.
- There is no record you suffered side effects from the initiation of the medication atenolol and increased dose of the medication losartan with Direct Observed Therapy (DOT) administration as you claim in your appeal.
- There is no documentation to support your allegation that your care was inappropriate on June 27, 2014. *!?!*
- You continue to be enrolled in the Chronic Care Program (CCP) where your medical conditions and medication needs are closely monitored.
- PCP/CCP follow up is pending scheduling and your medical condition will continue to be monitored with care provided as determined medically indicated by the PCP, in accordance with appropriate policies and procedures.

Although you have the right to submit an appeal as a staff complaint, it is not in the purview of inmates to request specific action taken in regard to the conduct of the inquiry or in regard to disciplinary action against personnel. It

T.NGUYEN, P12755
CMC HC 14048553
Page 2 of 2

should be noted your appeal was reviewed and evaluated by the Hiring Authority and the issue was deemed not to meet staff complaint criteria.

While the health care administrative appeals process is an important means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

You submitted copies of the first and second level response letters and rejection notice with your appeal package at the Director's Level of Review. Be advised, for a Director's Level Review all original appeal documents are required; this includes all appeal forms, rejection notices, and responses. In this instance, ICAB made an exception to accept the appeal for processing, and copies of the response letters and rejection notice were printed and stamped, "TREAT AS ORIGINAL"; however, in the future, appeals submitted that are missing original appeal documents will be subject to screen out pursuant to the California Code of Regulations (CCR), Title 15, Section 3084.6(b)(10).

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

**RULES AND REGULATIONS:**

The rules governing these issues are:  California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures; and the Department Operations Manual.

**ORDER:**

No changes or modifications are required by the institution.

J. Lewis, Deputy Director
Policy and Risk Management Services
California Correctional Health Care Services

Case 2:15-cv-07600-PSG-AS    Document 22    Filed 10/11/16    Page 37 of 87    Page ID
#:338
Case 2:15-cv-07600-PSG-AS    Document 17    Filed 08/18/15    Page 38 of 64    Page ID #:58

**ATTACHMENT COPY** *ATTACHED TO 3rd LEVEL APPEALS*

36

## CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institution Response for Second Level HC Appeal

**Date:** 12/1/14

**To:** NGUYEN, TIEN (P12755)
G 023 1000027L
California Men's Colony
P.O. Box 8101
San Luis Obispo, CA 93409-8101

**Tracking/Log #:** CMC HC 14048553

**Appeal Issues:**
In your CDCR-602HC Inmate/Parolee Health Care Appeal Form received on 8/12/2014, you state you are being forced to take your medications one time daily and are giving you severe back pain, palpitation, dizziness, cramps and pain in liver. You are requesting urgent investigations on your Primary Care Physician's (PCP) expertise and his latent criminal intent. You are also requesting to turn this case into the California Medical Board in Sacramento before you do.

| Issue Type | Action Requested |
|---|---|
| **Issue 1:** Medication ( Med Distribution ) | noxious overdose prescribed |

**Interview:**
You were interviewed by J.Haar, MD on September 12, 2014 regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issue(s). Simple English language was used and the physician spoke clearly and slowly. You were given a chance to ask questions which were answered appropriately. You were able to discuss the circumstances of the appeal and the resulting events which showed that you understood the appeals process. Effective Communication was achieved.

**Response:**
You were informed of the following at the First Level of Review (FLR): A review of your appeal with attachment(s), electronic Unit Health Record (UHR), and all pertinent departmental policies and procedures were reviewed. Upon review by the Hiring Authority/Designee, it was determined your appeal did not rise to the level of a staff complaint as the evidence does not reflect staff misconduct. Your allegations reflect "Medication Distribution" and will be addressed as such at the First Level of Review.

You were seen by Dr. Lee on 06/30/14 to evaluate your history of high blood pressure. At the time of the visit your blood pressure was noted to be 175/91, which is elevated. At the time of this encounter you were on Losartan 50mg daily for your hypertension. During his interview with you, you noted you had headaches since childhood. Because of your elevated blood pressure while on Losartan 50mg and your history of chronic headaches, Dr. Lee decided to add Atenolol 50mg daily to your medications. This is an appropriate dose for this medication. During the office visit, Dr. Lee was concerned you were not taking your medications correctly and wrote to have your medications Doxazosin 2mg, Losartan 50mg, and Omeprazole 20mg changed from Keep On Person (KOP) to Direct Observed Therapy (DOT). He also wrote for the new medication, Atenolol 50mg, to be taken DOT. Dr. Lee's order did not go into effect until 7/24/2014. You told Dr. Haar during the appeals interview you started to feel ill 10 days after coming daily to the pill line to take your DOT medications. On 07/28/14 you submitted a 7362 to triage noting you wanted a change to your Omeprazole and Ibuprofen dosing. During the discussion with the triage RN you requested all your medications "to be made KOP". You did not mention any side effects of severe back pain, palpitations, dizziness, cramping, or pain in your liver. You were seen by your Primary Care Physician (PCP), Dr. Guiang on 08/08/14 for being non-compliant with your Omeprazole medication which was DOT in the morning line. You did not mention feeling ill at that time or

RECEIVED
DEC 04 2014
HC APPEALS

38

ATTACHMENT COPY

T.NGUYEN, P12755
CMC HC 14048553
Page 2 of 2

ATTACHED TO
3rd LEVEL APPEALS

mention any side effects of taking your medications "1 single time daily." On 08/08/14, Dr. Guiang switched your Omeprazole 20mg back to KOP. On 08/12/14 Dr. Guiang switched your Doxazosin 2mg and Atenolol 50mg and Losartan 50mg back to KOP but did not change the time you were to take your medication. That is, your prescriptions were still to take your Doxazosin 2mg and Atenolol 50mg and Losartan 50mg together in the evening. Your current prescriptions written by Dr. Guiang still have the Doxazosin 2mg and Atenolol 50mg and Losartan 10mg to be taken in the evening together. You were last seen by your PCP, Dr. Guiang, on 08/27/14 at which time you did not complain of severe back pain, palpitations, dizziness, cramping, or pain in your liver. If you are in need of Health Care Services you are advised to follow policy and procedures by completing a Health Care Services Request Form (CDCR 7362) via the triage nurse in your housing unit explaining your issue. Your appeal was denied at the FLR.

You completed Section D of the CDCR 602 in which you state before ER care on 6/27/14 you had already taken Losartan 10 mg on night of crisis, RN took your blood pressure two times and mumbled "98..too high," the ER Doctor double up your Losartan to 50 mg, then on June 30 the doctor quadrupled total dose to 100 mg. You are asking if the reviewer is saying the ER Doctor dosage was appropriate. Therefore your appeal your appeal is assigned at the Second Level of Review (SLR).

A complete and thorough review of your submitted appeal with attachment(s), electronic Unit Health Record (eUHR), and all pertinent departmental policies and procedures were completed. Only the original allegations and appeal requests will be addressed at the SLR. As stated in the FLR your appeal was reviewed by the Hiring Authority/Designee and was determined your appeal did not rise to the level of a staff complaint as the evidence does not reflect staff misconduct. Your question regarding the appropriate dose of Losartan is a new issue and normally not addressed in the appeal however it will be addressed. The Losartan which was prescribed was medically indicated. You are being closely monitored for your conditions and your medications work together for your medical issues. You are considered an active partner and participant in the health care delivery system; therefore, you are encouraged to cooperate with your clinician(s) in order to receive the proper care and management of your condition. You will continue to be evaluated and treatment will be provided based on your clinician(s) evaluation, diagnosis, and recommended treatment plan in accordance with the appropriate policies and procedures.

**Appeal Decision:**
Based upon the aforementioned information, your appeal is denied

D. Ralston, M.D.
Chief Medical Officer
California Men's Colony

Date  12/2/2014

M. Wallace
Chief Support Executive
California Men's Colony

Date  12/3/14

RECEIVED
DEC 1 5 2014
HC APPEALS

37



**COPY**

CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institution Response for First Level HC Appeal

**Date:**   September 12, 2014

**To:**   NGUYEN, TIEN (P12755)
G  023 1000027L
California Men's Colony
P.O. Box 8101
San Luis Obispo, CA 93409-8101

**Tracking/Log #:**   CMC HC 14048553

**Appeal Issues:**
In your CDCR-602HC Inmate/Parolee Health Care Appeal Form received on 8/12/2014, you state you are being forced to take your medications one time daily and are giving you severe back pain, palpitation, dizziness, cramps and pain in liver.  You are requesting urgent investigations on your Primary Care Physician's (PCP) expertise and his latent criminal intent.  You are also requesting to turn this case into the California Medical Board in Sacramento before you do.

| **Issue Type** | **Action Requested** |
| --- | --- |
| Issue 1:  Medication ( Med Distribution ) | noxious overdose prescribed |

**Interview:**
You were interviewed by J.Haar, MD on September 12, 2014 regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issue(s).  Simple English language was used and the physician spoke clearly and slowly.  You were given a chance to ask questions which were answered appropriately.  You were able to discuss the circumstances of the appeal and the resulting events which showed that you understood the appeals process. Effective Communication was achieved.

**Response:**
A review of your appeal with attachment(s), electronic Unit Health Record (UHR), and all pertinent departmental policies and procedures were reviewed. Upon review by the Hiring Authority/Designee, it was determined your appeal did not rise to the level of a staff complaint as the evidence does not reflect staff misconduct.  Your allegations reflect "Medication Distribution" and will be addressed as such at the First Level of Review.

You were seen by Dr. Lee on 06/30/14 to evaluate your history of high blood pressure. At the time of the visit your blood pressure was noted to be 175/91, which is elevated. At the time of this encounter you were on Losartan 50mg daily for your hypertension. During his interview with you, you noted you had headaches since childhood. Because of your elevated blood pressure while on Losartan 50mg and your history of chronic headaches, Dr. Lee decided to add Atenolol 50mg daily to your medications. This is an appropriate dose for this medication. During the office visit, Dr. Lee was concerned you were not taking your medications correctly and wrote to have your medications Doxazosin 2mg, Losartan 50mg, and Omeprazole 20mg changed from Keep On Person (KOP) to Direct Observed Therapy (DOT). He also wrote for the new medication, Atenolol 50mg, to be taken DOT. Dr. Lee's order did not go into effect until 7/24/2014. You told Dr. Haar during the appeals interview you started to fill ill 10 days after coming daily to the pill line to take your DOT medications. On 07/28/14 you submitted a 7362 to triage noting you wanted a change to your Omeprazole and Ibuprofen dosing. During the discussion with the triage RN you requested all your medications "to be made KOP". You did not mention any side effects of severe back pain, palpitations, dizziness, cramping, or pain in your liver. You were seen by your Primary Care Physician (PCP), Dr. Guiang on 08/08/14 for being non-compliant with your Omeprazole medication which was DOT in the morning line. You did not mention feeling ill at that time or

*Feel*

Case 2:15-cv-07600-PSG-AS    Document     Filed 09/28/15    Page 41 of 64    Page ID #:41

39

COPY

T.NGUYEN, P12755
CMC HC 14048553
Page 2 of 2

mention any side effects of taking your medications "1 single time daily." On 08/08/14, Dr. Guiang switched your Omeprazole 20mg back to KOP. On 08/12/14 Dr. Guiang switched your Doxazosin 2mg and Atenolol 50mg and Losartan 50mg back to KOP but did not change the time you were to take your medication. That is, your prescriptions were still to take your Doxazosin 2mg and Atenolol 50mg and Losartan 50mg together in the evening. Your current prescriptions written by Dr. Guiang still have the Doxazosin 2mg and Atenolol 50mg and Losartan 10mg to be taken in the evening together. You were last seen by your PCP, Dr. Guiang, on 08/27/14 at which time you did not complain of severe back pain, palpitations, dizziness, cramping, or pain in your liver. If you are in need of Health Care Services you are advised to follow policy and procedures by completing a Health Care Services Request Form (CDCR 7362) via the triage nurse in your housing unit explaining your issue.

**Appeal Decision:**
Based upon the aforementioned information, your appeal is denied.

J. Haar, M.D.                                              9/16/14
Physician and Surgeon                          Date
California Men's Colony


C. Barber, M.D.                                           9/18/14
Chief Physician & Surgeon                     Date
California Men's Colony

40

CMC·
MEDICAL RECORDS DEPARTMENT
FILE REQUEST

RECEIVED
JAN 2 9 2015

COPY

NAME: NGUYEN, TIEN   DATE: 1-26-2015

CDCR#: P12755   HOUSING: 23 / 27L

The Medical Records Department has received your request to review/receive medical record copies. In an effort to reduce your copying cost and to rush your request, please be **SPECIFIC** as to the information you are requesting and purpose for review.

| CHECK MARK | INFORMATION NEEDED | DATES NEEDED | |
|---|---|---|---|
| | | Beginning Date | Ending Date |
| ✓ | DOCTOR ORDERS | Jan 1st 2013 | Jan 30-2015 |
| | PROGRESS NOTES | ? | |
| ✓ | MEDICATION RECORDS | Feb - 1st 2013 | Jan 30-2015 |
| | PUBLIC HEALTH/VACCINES * | | |
| ✓ | LAB REPORTS last 6 mo ? | Feb - 1 - 2013 | Jan 30-2015 |
| ✓ | XRAY REPORTS | Feb - 1 - 2007 | Jan 30-2014 |
| | CONSULTATIONS/SPECIALTIY | not F/P waiting | |
| | CHRONOS | | |
| ✓ | DENTAL RECORDS | Feb - 1 - 2007 | Jan 30-2014 |
| | HOSPITAL/INFIRMARY STAYS | | |
| | MENTAL HEALTH RECORDS * | | |
| ✓ | OTHER (PLEASE SPECIFY) | | |

IS/M Request No Copy ✓   ? ?

Emergency Room (Ch.C East) Jun 27/2014

*Needs approval prior to release

REASON FOR REVIEW: TO HAVE CLEAR KNOWLEDGE ON PERSO-
NAL FILE AND TO ASK FOR SOME
DOCUMENTS' COPYING

Inmate Signature: _____   Date: 1/26/15

REVISED 3-22-13

## California Men's Colony – Health Information Management
## RECEIPT FOR MEDICAL RECORDS

*41*

NAME: Nguyen, Tien          CDCR#: P12755

REVIEW DATE: _____

I have received the copies that I requested from the Health Information Management Department. These copies include:

| | FORMS | DOCUMENT DATES | #PGS |
|---|---|---|---|
| 1 | Physician Orders | | |
| 2 | Progress Notes | 6/27/14 - 7/3/14 | 10 |
| 3 | Medications (MAR's) | 8/6/14 - 2/5/15 | 40 |
| 4 | Physicals | | |
| 5 | Public Health | | |
| 6 | Laboratory | 10/16/13, 7/1/14 | 3 |
| 7 | Radiology/Dia gnostics | 9/23/98 - 6/17/14 | 11 |
| 8 | Chronos | | |
| 9 | Consults/Trea tments | | |
| 10 | Outside Facilities/Misc | | |
| 11 | Dental | 1/5/98 - 2/13/13 | 29 |
| 12 | Mental Health Records | | |
| 13 | Medical Legal | | |
| 14 | Inpatient Records | | |

TOTAL COPIES RECEIVED: 93

I understand that with the above-mentioned copies in my possession, the Health Information Management Department can no longer be held responsible for the confidentiality of these documents.

_____          2/17/15
Inmate's Signature                    Date Received

42

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
**AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION**
CDCR 7385 (Rev. 11/14)                                          Form: Page 1 of 2
                                                              Instructions: Page 3

| _All sections_ must be completed for the authorization to be honored. Use "N/A" if not applicable. |
|---|
| **I. Patient Information** |

Last Name: _Nguyen_    First Name: _Tien_    Middle Name: _M._

CDCR #: _P 12755_    Date of Birth: _12/9/37_

Street Address: _HWY 1_    City/State/Zip: _SLO CA, 93409-8101_

**II. Individual/Organization Authorized to Release Personal Health Records if Other Than CDCR**

Name: _____

Address: _____    City/State/Zip: _____

**III. Individual/Organization to Receive the Information**
[45 C.F.R. § 164.508(c)(1)(ii), (iii) & Civ. Code § 56.11(e), (f)]
_The undersigned hereby authorizes CDCR's Health Information Management to release the below health information pursuant to this authorization._

Name: _____    Relationship to Inmate: _Self_

Address: _____    City/State/Zip: _____

Phone: _____    Fax: _____

**IV. Authorization Expiration Event or Expiration Date for Release of Verbal Information/ Written Correspondence**
[45 C.F.R. § 164.508(c)(1)(v) & Civ. Code § 56.11(h)]

Unless otherwise revoked by the inmate, this authorization for the release of my health care information to the above-named person or organization will expire upon (choose one):

☐ Date (mm/dd/yyy): _____    ☒ Release from Custody

☐ Happening/conclusion of this event: _____
                                        (e.g., conclusion of litigation, completion of surgery)

**V. Hardcopy Health Care Records to be Released**
[45 C.F.R. § 164.508(c)(1)(i) & Civ. Code § 56.11(d), (g)]

A separate authorization is required for each request to release hardcopy records. Records for the following period of time are requested (must be completed to receive records):

☐ From (mm/dd/yyyy): _2/1/07_    To (mm/dd/yyyy): _1/30/15_

☒ Medical Services    ☒ Dental Services    ☐ Mental Health Services

☒ Communicable Disease    ☐ Genetic Testing    ☒ HIV Test Results

☐ Substance Abuse/Alcohol    ☐ Other: _____

Requests for Psychotherapy Notes require a separate CDCR 7385 in order to be fulfilled and _may not be combined with any other request for health care records._

☐ Psychotherapy Notes

California Correctional Health Care Services

CALIFORNIA MEN'S COLONY

### MEDICAL PROGRESS NOTE

| NAME: NGUYEN, TIEN | CDCR#: P12755 | DATE OF SERVICE: 06/27/2014 |
|---|---|---|
| DATE OF BIRTH: 12/09/1937 | HOUSING: G023 1000027L | PAROLE DATE: LIFE |

TIME: 1950

Test of Adult Basic Education (TABE) score 2.1.

SUBJECTIVE: The patient is a 76-year-old male who has a history of hypertension and was last seen by his chronic care physician on 06/02/2014. He states that he takes losartan 25 mg in the evening for blood pressure control. He states that, today, he came over to the clinic and was seen by the Triage Nurse because of a headache that started this afternoon around 3:00 and also feeling slightly dizzy. He also states that he took some Tylenol yesterday for some generalized mild headache. He has not had any nausea or vomiting and is not experiencing any chest pain or shortness of breath. In reviewing his chart, it appears that his blood pressure has been mostly well controlled with a systolic blood pressure being in the 140 to 150 range at times. He has good kidney function at last look in October 2013 and electrocardiogram in October 2013 was read as nonspecific T and T-wave abnormalities with a normal sinus rhythm. The patient has not taken his usual nighttime medications yet, which are losartan 25 mg and doxazosin 2 mg daily. He was sent to the East Clinic for further evaluation. He does not have any other specific complaints at this time.

I spoke with the nurse at California Men's Colony (CMC) West, who states that the patient's belongings were searched and his medication packets were brought to the clinic. There were no packets for losartan, and it is unclear when those had last been dispensed. Therefore, it is uncertain that the patient is actually taking this medication. My intent was to have the patient take his medication after returning back to his housing unit but we needed to have Pharmacy come in to fill the prescription, and the medication was taken over to his housing unit and just given to him at 2130. At 2145, his blood pressure had decreased to 190/100, and the patient was still complaining of a mild headache but continued to be neurologically intact. The plan now is for the patient to come back in the morning for a recheck of his blood pressure. I anticipate that when he is back on his blood pressure medicine, his headache will go away once his blood pressure is under better control.

MEDICATIONS: Please see list dated 06/27/2014.

**ALLERGIES: NONE.**

OBJECTIVE: VITAL SIGNS: Temperature 98.6, pulse 88, blood pressure 234/103, respiratory rate 18. Height 5 feet 4 inches. Weight 125 pounds, which is stable. GENERAL: The patient is a pleasant male who ambulates easily into the examination room with the use of a cane and is able to transfer to the examination table without assistance. SKIN: No jaundice, pallor or rash is noted. HEENT: Pupils equal, round and reactive to light. Extraocular movements are intact. Fundi are benign as far as I can ascertain. Throat is clear. NECK: Supple and with full range of motion. LUNGS: Clear to auscultation without rales or wheeze. HEART: Regular rate and rhythm without a murmur. EXTREMITIES: No edema is noted. NEUROLOGICAL: Cranial nerves II-XII intact. The patient is able to balance on either leg one at a time. He has a negative Romberg, and he has an even gait. Speech is clear and coherent, and memory is intact. Alert and oriented x3. Motor 5/5 in biceps, triceps, hip flexors and leg extensors. No decreased sensation is noted.

LABORATORY DATA/DIAGNOSTIC DATA: EKG is done that shows no change compared with EKG on 10/03/2013.

ASSESSMENT: Hypertension. The patient has some mild headache symptoms, but he also has not taken his nighttime medications. Given the history of level systolic hypertension, I will go ahead and increase his dose of losartan to 50 mg daily. I will have the nurse give that to him from his regular prescription and monitor him over at the West Clinic. If his blood pressure decreases and the headache subsides, I will let him go back to his housing unit. If the headache persists or if the patient has any change in his neurological status after taking this medication, then I will send him down to the outside hospital for further evaluation. However, the patient appears to be completely neurologically intact, and I do not see a reason at this point in time for imaging studies to be done. I will have this patient be seen by his physician in 3 days and also have a metabolic panel checked at that time to make sure that his creatinine or kidney function has not changed since the last test in October 2013.

DICTATED BY Denise Taylor, MD
NGUYEN TIEN

P12755

California Correctional Health Care Services

CALIFORNIA MEN'S COLONY

PLAN:
1. Losartan 50 mg tonight and then monitor blood pressure 30 and 60 minutes afterwards. If his blood pressure decreases, he will go back to his housing unit. If not, a different disposition will be arranged.
2. Metabolic panel to be done on Monday if the patient remains in his housing unit.

EDUCATION: The patient understands and agrees with the above assessment and plan.

EFFECTIVE COMMUNICATION: The patient has a TABE score of 2.1, and he is also Disability Not Impacting Placement Hearing (DNH). I ensured effective communication by speaking more slowly and using basic language. I leaned closer to the patient since there was some ambient noise and spoke directly to him in a louder voice. The patient asked questions, was able to sum up the information, and effective communication was achieved.

FOLLOWUP: Follow up in 3 days with the primary care physician. A pass will be given so that he can go to the clinic on Monday.

DISABILITY CODE:
(X) TABE score less than 4.0
() DPH  () DPV  () LD
() DPS  (X) DNH
() DNS () DDP
() Not Applicable

ACCOMMODATION:
() Additional time
() Equipment () SLI
(X) Louder (X) Slower
(X) Basic () Transcribe
() Other*

EFFECTIVE COMMUNICATION:
(X) Patient-inmate asked questions.
(X) Patient-inmate summed information
PLEASE CHECK ONE
() Not reached*    (X) Reached
   *See Chrono/notes

COMMENTS:

X dt
_____
Denise Taylor, MD
Digitally authenticated on 7/7/2014 11:48 AM

DT/kls  D: 06/27/2014 08:03:00 pm          T: 06/28/2014 06:27:20 am          Job #: 987816
*AMENDED/06/27/2014/DT/ksg/drr Job #987820*

DICTATED BY Denise Taylor, MD
NGUYEN TIEN          DOB  12/09/1937    Page 2 of 2          DOS: 06/27/2014          P12755

California Correctional Health Care Services

45

CALIFORNIA MEN'S COLONY

## MEDICAL PROGRESS NOTE

| NAME: NGUYEN, TIEN | CDCR#: P12755 | DATE OF SERVICE: 07/03/2014 |
|---|---|---|
| DATE OF BIRTH: 12/09/1937 | HOUSING: G023 1000027L | PAROLE DATE: LIFE |

TIME: 8:35 a.m.

Test of Adult Basic Education (TABE) score = 2.1.
Developmentally Disabled Program (DDP): Normal cognitive functioning (NCF). DNH

CHIEF COMPLAINT: Follow up from emergency room visit.

SUBJECTIVE: This is a 76-year-old Vietnamese male with a past medical history of hypertension, hyperlipidemia and migraine headaches. He was seen at the emergency room on 06/29/2014 because of headache and his blood pressure was noted to be high at 199/91. He was not able to take his blood pressure medication losartan during this time, but now he is taking his blood pressure medication regularly and his blood pressure is better controlled, but he is still having on and off migraine headaches on one side of the face, sharp, lasting for a few hours with nausea, but no vomiting. He is on ibuprofen for pain control.

He also complains of a persistent nonproductive cough. He denies any sweating or night sweats, no anorexia and no significant weight loss.

**ALLERGIES: NO KNOWN DRUG ALLERGIES.**

OBJECTIVE: VITAL SIGNS: Blood pressure 158/81, heart rate 97, temperature 97 degrees, respiratory rate 18. Pulse oxygen saturation 96%. Height 5 feet 4 inches. Weight 125 pounds. Body mass index 23. HEENT: Nonicteric sclerae. No tenderness at the temporal area. No thyromegaly. LUNGS: Clear breath sounds. HEART: S1 and S2. No murmurs. No gallops. ABDOMEN: Soft, nontender. NEUROLOGICAL: The patient is awake and alert. Cranial nerves II-XII grossly intact. No focal neurological deficits.

ASSESSMENT:
1. Follow up from emergency room visit for uncontrolled hypertension and headache, stable at present.
2. History of migraine headache.
3. Cough.

PLAN:
1. Continue current antihypertensive medications. Discussed about compliance of medication.
2. Imitrex 50 mg at the onset of headache, maximum of eight tablets per month.
3. Benzonatate p.r.n. for cough for 10 days.

EDUCATION: His TABE score is 2.1. DDP code is NCF. He was accommodated with additional time. The patient asked questions. Effective communication was obtained.

FOLLOWUP: I will see him for followup in 60 days.

DISABILITY CODE:
(X) TABE  score less than 4.0
( ) DPH ( ) DPV ( ) LD
( ) DPS  (x ) DNH
( ) DNS ( ) DDP
( ) Not Applicable

ACCOMMODATION:
(X ) Additional time
( ) Equipment ( ) SLI
(x ) Louder ( ) Slower
( ) Basic ( ) Transcribe
( ) Other*

EFFECTIVE COMMUNICATION:
(X) Patient-inmate asked questions.
(x ) Patient-inmate summed information
PLEASE CHECK ONE
( ) Not reached*   (X) Reached
   *See Chrono/notes

DICTATED BY Camilo Guiang, MD
NGUYEN TIEN

P12755

California Correctional Health Care Services

CALIFORNIA MEN'S COLONY

COMMENTS:

X csg
_____
Camilo Guiang, MD
Digitally authenticated on 7/8/2014 8:19 AM

CG/pb   D: 07/03/2014 09:18:00 am          T: 07/08/2014 06:02:56 am          Job #: 991040



# Cases on the Web

## Interactive Webcasts With IAS–USA Faculty

Monthly webinars provide live, interactive accompaniment to a variety of published *Cases on the Web*. The webinar format provides a chance to ask questions and receive responses in real time. Moreover, registration is free of charge.

Register now for this upcoming webinar:

- **Will You Still Treat Me When I'm 64? Care of the Oldest Adult With HIV Infection**, presented by Howard Libman, MD—January 15, 2015

For the webinar schedule and an archive of past presentations, please visit www.iasusa.org/webinars.

### COMING SOON

*Cases on the Web* is a series of case-driven continuing medical education activities sponsored by the International Antiviral Society–USA. The *Cases on the Web* program was created to offer physicians convenient online access to top-quality education.

Look for these new *Cases on the Web* activities.

**Diagnosis and Management of Major or Persistent Depression in the HIV-Infected Patient**
Francine Cournos, MD, and Milton L. Wainberg, MD

**Treatment of Opioid Dependence in HIV**
Jeanette M. Tetrault, MD, FACP, and David A. Fiellin, MD

**End-Stage Renal or Hepatic Damage and Antiretroviral Drug Dosing**
John J. Faragon, PharmD, BCPS

### SELECTED CURRENT CASES ON THE WEB

**Prevention of Cardiovascular Disease in the HIV-Infected Individual**
Michelle Zikusoka, MD, MHS, Wendy S. Post, MD, MS, and Todd T. Brown, MD, PhD
CME Credit Available: **1.50** *AMA PRA Category 1 Credits*™
Level: **Advanced**

Given the prevalence of traditional risk factors, the aging of HIV-infected individuals, and the potential cardiovascular consequences of HIV disease and antiretroviral therapy, more attention should be focused on efforts to decrease the morbidity and mortality associated with atherosclerotic cardiovascular disease (ASCVD) and HIV infection. The key to success in CVD prevention is education of the clinician and the patient.

**Geriatrics and HIV**
Harjot K. Singh, MD, ScM, and Eugenia Siegler, MD

CME Credit Available: **1.50** *AMA PRA Category 1 Credits*™
Level: **Advanced**

The percentage of HIV-infected patients older than 50 years is expected to increase to more than 50% by 2020, based on modeling. Treatment with single-tablet regimens can lead to durable viral suppression. However, viral suppression comes at the price of lifelong treatment and is further complicated by the expected challenges associated with aging itself.

**Hepatitis C Viral Targets**
Stuart C. Ray, MD, Justin R. Bailey, MD, PhD
CME Credit Available: **1.50** *AMA PRA Category 1 Credits*™
Level: **Advanced**

A 2008 study by Limketkai and colleagues showed that in patients with HIV/HCV coinfection, hepatic fibrosis stage was independently associated with risk of progression to end-stage liver disease, hepatocellular carcinoma, and death, and that sustained virologic response after treatment of HCV infection was associated with survival. These findings highlight the importance of staging of liver disease and, whenever possible, treating HCV in HIV/HCV-coinfected individuals.

**Initiating Antiretroviral Therapy in Resource-Limited Settings**
Habib Ramadhani Omari, MD, MPH, MHS, and John A. Bartlett, MD
CME Credit Available: **1.50** *AMA PRA Category 1 Credits*™
Level: **Advanced**

Antiretroviral therapy has been tremendously successful in reducing morbidity and mortality among HIV-infected persons, and an estimated 10,000,000 people globally are now receiving it. Stigma and the need for strict medication adherence are commonly encountered throughout the world. In resource-limited contexts, there is an additional challenge of maintaining a continuous drug supply and having the ability to properly monitor treatment. Early treatment initiation is essential to preserve immunity, prevent the emergence of AIDS-defining illnesses, and decrease HIV transmission.

**Novel HIV-1 Resistance and Tropism Testing**
Jonathan Li, MD
CME Credit Available: **1.25** *AMA PRA Category 1 Credits*™
Level: **Advanced**

The remarkable diversity of HIV stems from a high replication rate and the error-prone reverse transcriptase enzyme used to translate HIV RNA into DNA. Up to 5 mutations may arise with each new HIV virus produced; more than a billion new virions may be produced daily in a chronically infected patient. This diversity and rapid evolution allow HIV drug resistance to emerge in patients who are on antiretroviral therapy that is not adequately suppressive or who are not fully adherent to their antiretroviral regimen. When available, HIV drug–resistance testing should be used to guide the selection of an optimal antiretroviral regimen.

---

**For information about *Cases on the Web*, please contact the IAS–USA.**
Phone: (415) 544-9400 • Fax: (415) 544-9401 • E-mail: info"at"iasusa.org • Website: www.iasusa.org/cow

Case 2:15-cv-07600-PSG-AS    Document 22    Filed 10/11/16    Page 49 of 87    Page ID
#:350
Case 2:15-cv-07600-PSG-AS    Document 1    Filed 09/28/15    Page 42 of 64    Page ID #:42

IAS–USA *Topics in Antiviral Medicine*



www.HCVguidelines.org

- ■ **Developed by a panel of experts in the field.**

- ■ **Provides practitioners with regularly updated, evidence-based, consensus recommendations for screening, treating, and managing patients with HCV.**

- ■ **Assists practitioners in treating the estimated 3 to 4 million Americans infected with HCV by highlighting the latest information in improved diagnostics and new drug options as they meet FDA approval.**

- ■ **Offers guidance to practitioners about how to best use the next generation of direct-acting antivirals and other treatment options in the care of their patients.**

# Recommendations for Testing, Managing, and Treating Hepatitis C Virus

*Recommendations for Testing, Managing, and Treating Hepatitis C* is a website sponsored by the American Association for the Study of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA) in collaboration with the International Antiviral Society–USA (IAS–USA) to provide the most current guidance for the treatment of hepatitis C virus (HCV).

Recently, several sections of the Guidance were extensively revised based on newly available therapies approved by the US Food and Drug Administration. Visit www.hcvguidelines.org to review the updates to sections on Initial Treatment of HCV Infection; Retreatment of Persons in Whom Prior Therapy Has Failed; Monitoring Patients Who Are Starting Hepatitis C Treatment, Are on Treatment, or Have Completed Therapy; and Unique Populations (Patients With HIV/HCV Coinfection, Patients With Decompensated Cirrhosis, Patients Who Develop Recurrent HCV Infection Post–Liver Transplantation, and Patients With Renal Impairement).



## Available sections:

- ■ HCV Testing and Linkage To Care
- ■ When and in Whom to Initiate HCV Therapy
- ■ Initial Treatment of HCV Infection
- ■ Retreatment of Persons in Whom Prior Therapy Has Failed
- ■ Monitoring Patients Who Are Starting Hepatitis C Treatment, Are on Treatment, or Have Completed Therapy
- ■ Unique Patient Populations
  - Patients With HIV/HCV Coinfection
  - Patients With Decompensated Cirrhosis
  - Patients Who Develop Recurrent HCV Infection Post–Liver Transplantation
  - Patients With Renal Impairment
- ■ Management of Acute HCV Infection

California Correctional Health Care Services

CALIFORNIA MEN'S COLONY

## CHRONIC CARE FOLLOWUP VISIT/PROGRESS NOTE

| NAME: NGUYEN, TIEN | CDCR#: P12755 | DATE OF SERVICE: 06/30/2014 |
| DATE OF BIRTH: 12/09/1937 | HOUSING: G023 1000027L | PAROLE DATE: LIFE |

TB CODE: 32

TIME: 10:11 a.m.

Test of Adult Basic Education (TABE) score:  TABE score 2.1.
Disability Not Impacting Placement Hearing (DNH) and Disability Not Impacting Placement Mobility (DNM).

CHIEF COMPLAINT:  Followup hypertension.  Noted elevated blood pressure 06/27/2014.

CHRONIC MEDICAL PROBLEMS/SUBJECTIVE:  This is a 76-year-old Asian male with a long history of hypertension who was being seen on 06/27/2014 for headache and noted elevated blood pressure of 180/100.  The patient reports he has been compliant on medications and recently changed Losartan from 25 mg to 50 mg daily.  Previous chronic care notes reviewed 06/02/2014 with well-controlled hypertension.  Blood pressure at that time noted on 06/02/2014 was 137/77.  He reports he has a history of right hemicranial headache since "I was a kid," but perhaps worse since 2011 and no change since then.  He also states that he has chest discomfort "since I was a kid, whenever I catch cold."  Presently he states he is coughing but denies any hemoptysis or shortness of breath.  Problem list notes chronic headache, migraine, without aura, and patient also reports he has had migraines since "as a child," but perhaps worse since 2011.  He has no focal neurologic symptoms.  He has no shortness of breath, lightheadedness, or dizziness.  Other medical problems include osteoarthritis and hearing loss with hearing aids.  He is only wearing a right hearing aid.  The left hearing aid he left out purposely.  He states "It hurts when somebody shouts," referring to his left ear and wearing a hearing aid on that side.  Another medical problem is chronic hepatitis C, genotype 1, previously refused treatment.  He denies any present illicit drug use.  He initially states "A lot, I cannot remember." when he thought was referring to intravenous illicit drug use.  Then he changes to "nothing" in terms of intravenous or illicit drug use and then changes it again to "opium" orally but denies any intravenous illicit drug use.  The patient has no known complication from hypertension.  He has no history of heart disease.  He does have hyperlipidemia and benign prostatic hypertrophy.  He has a history of hemorrhoids and gastroesophageal reflux disease.

On 06/02/2014 notation notes bronchitis and given doxycycline for 14 days with complaint of cough with yellow-green phlegm.

PAST MEDICAL HISTORY:  Problem list reviewed and updated.

MEDICATIONS:  The patient compliant on medication with the following active medications:
1. Hydrocortisone 0.1% cream topically/rectally as needed for hemorrhoids.
2. Doxazosin 2 mg 1 every evening.
3. Ibuprofen 800 mg 1 tablet 3 times a day as needed for pain.
4. Losartan 50 mg daily.
5. Omeprazole 20 mg daily.

The patient understands medication indication and no reported side effects.

**ALLERGIES: NO KNOWN DRUG ALLERGIES.**

REVIEW OF SYSTEMS:  No fever.  Denies hemoptysis, shortness of breath.  The patient complained of chest pain heaviness "since I was a kid," and "whenever I catch a cold," referring to perhaps coughing.  The patient describes very poorly his symptoms and timeline is very unclear.  He denies focal neurologic symptoms.  No abdominal pain.  No shortness of breath.  No edema.  No light-headedness.

OBJECTIVE/OBSERVATION: VITAL SIGNS:  Blood pressure 175/91, temperature 97.9, respiratory rate 18, repeat 16, pulse 96.  O2 saturation 99% on room air.  Stated height 5 feet 4 inches.  Weight 125 pounds.  Body mass index 21.  Vital

DICTATED BY Scott Lee, MD
NGUYEN TIEN

California Correctional Health Care Services

CALIFORNIA MEN'S COLONY

signs by O'Bryant, LVN. GENERAL: No apparent distress. The patient has difficulty hearing with loud voice, and slow speech used and repetition. HEENT: Patient wearing hearing aid on the right side, absent from left ear. External ears, nose, lip otherwise normal. NECK: Without masses, lymphadenopathy, thyromegaly, or tenderness. No jugular venous distention. CHEST: Clear to auscultation, palpation, inspection, and percussion. Normal respiratory effort. No rales, wheezes, or rhonchi. HEART: Regular rate and rhythm. Normal S1, S2. No heaves, rubs, or thrills. Chest nontender. ABDOMEN: Soft, nontender. EXTREMITIES: Gait and station normal. The patient is able to lift his cane and walk a few steps with normal gait.

LABORATORY DATA/DIAGNOSTIC DATA:

ASSESSMENT:
1. Elevated blood pressure not at goal.
2. Recent bronchitis per 06/02/2014. Completed doxycycline.
3. Other medical problems not targeted but history of right hemicranial headache, long history of migraine headache without aura. Other medical problems not targeted are osteoarthritis, chronic hepatitis C, benign prostatic hypertrophy, and gastroesophageal reflux disease.

*(See Recommendations for Testing)*

PLAN:
1. Add Atenolol 50 mg every day for control of blood pressure and comorbid prophylaxis for migraine.
2. Continue other medications except will change to Direct Observation Therapy (DOT) since patient is a poor historian and there is question of compliance to medications. All DOT medication to be once daily medication and continue with Keep on Person (KOP) hydrocortisone and ibuprofen.

EDUCATION: Counseling and education regarding the addition of new medication and change to DOT. Education and counseling if worsening headaches, focal neurologic symptoms, shortness of breath, or fever the patient to report to medical personnel on an emergent immediate basis. Weekly nurse blood pressure checks to monitor and followup within 30 days to recheck blood pressure. Coordination of care with scheduling and nursing.

EFFECTIVE COMMUNICATION: TABE score 2.1. Effective communication was achieved. The patient has normal cognitive function. Slow and basic language was used, and patient-inmate had an opportunity to ask questions and summarize the visit.

FOLLOWUP: As above.

DISABILITY CODE:
(X) TABE score less than 4.0
() DPH () DPV () LD
() DPS (X) DNH
() DNS () DDP
() Not Applicable

ACCOMMODATION:
() Additional time
() Equipment () SLI
(x) Louder (X) Slower
(X) Basic () Transcribe
() Other*

EFFECTIVE COMMUNICATION:
(X) Patient-inmate asked questions.
(X) Patient-inmate summed information
PLEASE CHECK ONE
() Not reached*   (X) Reached
    *See Chrono/notes

COMMENTS:


X sl
_____
Scott Lee, MD
Digitally Authenticated on 7/2/2014 3:12 PM

SL/ab   D: 06/30/2014 10:43:00 am          T: 07/01/2014 01:49:15 pm          Job #: 988182

MEDICATION ADMINISTRATION RECORD

| NAME OF RN/LVN/LPT | INITIAL | NAME OF RN/LVN/LPT | INITIAL | NAME OF RN/LVN/LPT | INITIAL | NAME OF RN/LVN/LPT | INITIAL |
|---|---|---|---|---|---|---|---|

*** KOP *** DOXYCYCLINE HYCLATE 100 MG CAPSULE (doxycycline hyclate 100 mg cap)
TAKE 1 CAPSULE BY MOUTH TWICE DAILY UNTIL GONE **KOP**

Fill Date: 6/2/2014

Orig Fill Date: 6/2/2014

Rx#: 156861289

Days Supply: 14

Expire Date: 6/16/2014

Doctor: C. GUANG-MD

Date

*** KOP *** HYDROCORTISONE 1 % CREAM (G) (hydrocortisone 1% cream)
APPLY RECTALLY DAILY AS NEEDED FOR HEMORRHOIDS (MUST LAST 1 MONTH) "REQUEST REFILL"

Fill Date: 6/2/2014

Orig Fill Date: 6/2/2014

Rx#: 156857155

Days Supply: 30

Expire Date: 8/14/2014

Doctor: D. TAYLOR-MD

Date

Allergies
NO KNOWN DRUG ALLERGIES

Name: NGUYEN, TIEN

DOB: 12/9/1937

Building: CMC-West-Unit 4

CDCR # P12755

Housing

G 023 1000027L

Additional Pages In Use   Yes   No

COPY

6/2/2014 8:10:58 PM

MEDICATION RECONCILIATION - ACTIVE MEDICATIONS AS OF 8/4/2014

Patient (DOB) NGUYEN, TIEN (12/9/1937)
CDCR = P12755    UNIT # G 0231000027 L

| | Drug Name (Generic Name) | START DATE | LAST DISPENSE | EXP. DATE | RX# DOCTOR |
|---|---|---|---|---|---|
| ☐ RENEW ☐ STOP | HYDROCORTISONE 1% CREAM SIG. APPLY RECTALLY DAILY FOR HEMORRHOIDS | | | 9/1/2014 | 15687 0911 GUIANG MD. |
| ☐ RENEW ☐ STOP | IBUPROFEN 800 mg SIG. TAKE 1 TABLET BY MOUTH 3 TIMES A DAY... | | | 9/1/2014 | 458322038 GUIANG MD. |
| ☐ RENEW ☐ STOP | ATENOLOL 50 mg TABLET (Atenolol 50 mg tab u/d) SIG. ~~STOP~~ PER MD. TAKE 1 TABL BY MOUTH ~~RESTRICTION MET~~ R-DOT | 7/24/2014 | 7/23/~~2014~~ | 15687728-1 SC. |
| ☐ RENEW ☐ STOP | DOXAZOSIN MESYLATE 2 mg TABLET SIG. ~~STOP~~ PER MD. TAKE 1 TABLET BY MOUTH ~~RESTRICTION MET~~ R-DOT | 7/24/2014 | 7/23/~~2014~~ | 15687280-1 SC. |
| ☐ RENEW ☐ STOP | LORATADINE 10 mg TABLET SIG. TAKE 1 TABL BY MOUTH DAILY *REQUEST REFILL *KOP+ | 7/9/2014 | 10/7/2014 | 458830988 GUIANG MD. |
| ☐ RENEW ☐ STOP | LOSARTAN POTASSIUM 50 mg TABLET SIG. ~~STOP~~ PER MD. TAKE 1 TABLET BY MOUTH ~~RESTRICTION MET~~ R-DOT | 7/24/2014 | 7/23/~~2014~~ | (15687281-1) SC. |
| ☐ RENEW ☐ STOP | OMEPRAZOLE 20 mg CAPSULE, Delay Release *RESTRICTION MET *7/24/2014 SIG. ~~STOP~~ PER MD. TAKE 1 CAPSULE ~~RESTRICTION MET DAILY~~ R-DOT | 10/22/2014 | | 15687282-1 |
| ☐ RENEW ☐ STOP | SUMAtriptan 50 mg TABLET SIG. TAKE 1 TABLET BY MOUTH, MAY REPEAT IN 24 HRS (MAX=8 TABS/MONTH, PER MD. *REQ. REFILL *KOP *KOP | 7/3/2014 | 12/30/2014 | 15687092-1 GUIANG MD. |

① ONLY CHANGE OR PROCESS CHECKED PRESCRIPTIONS.

ALLERGIES = NO KNOWN DRUG ALLERGIES.

* * * SEND TO PHARMACY ONCE COMPLETE * * *

P. 11/14

MEDICATION ADMINISTRATION RECORD

| NAME OF RN/LVN/PT | INITIAL | NAME OF RN/LVN/PT | INITIAL | NAME OF RN/LVN/PT | INITIAL | NAME OF RN/LVN/PT | INITIAL |
|---|---|---|---|---|---|---|---|

*** DISCONTINUED *** LOSARTAN POTASSIUM 50 MG TABLET (losartan potassium 50 mg tab ud)
**DOT** PER MD: TAKE ONE TABLET BY MOUTH EVERY EVENING **DOT**

Fill Date: 7/24/2014    Orig Fill Date: 7/24/2014    Rx#: 156677281
Days Supply: 30    Expire Date: 7/23/2015    Doctor: Sc, LEE-MD

p. (mg) and (m) Lu)

Allergies:
NO KNOWN DRUG ALLERGIES

Name: NGUYEN, TIEN
DOB: 12/9/1937

Building: CMC-West-Unit 4
CDCR # P12755

Housing
G 023 1000027L

Additional Pages in Use
Yes    No

Confidential Saved 2015-02-11T19:49:26Z

8/12/2014 5:59:01 PM

P. 10/14

*54*

| NAME NGUYEN, TIEN | | | | CDC NUMBER P12755 |
|---|---|---|---|---|
| INSTITUTION CMC | SIDE W | FACILITY G | BLDG 23 | CELL 027L |
| TYPE OF TEST Lab | | | | DATE OF TEST 10/16/13 |

**YOUR TEST RESULTS HAVE BEEN EVALUATED BY A PHYSICIAN AND THE FOLLOWING HAS BEEN DETERMINED**

- [X] Your test results are essentially within normal limits or are unchanged and no physician follow up is required.
- [ ] You are being scheduled for a follow up medical appointment. You will be receiving a ducat indicating your
- [ ] A repeat test will be ordered. You will be ducated for this test.
- [ ] A chronic care appointment has been scheduled for you. You will be receiving a ducat indicating your

Additional Information

Guiang, C. MD
PRINTED NAME / TITLE

PRIMARY CARE PROVIDER SIGNATURE

CAMILO S GUIANG

DATE:

NOTIFICATION OF DIAGNOSTIC TEST RESULTS
CDCR 7393 (Rev. 03/07)

| NAME NGUYEN, TIEN | | | | CDC NUMBER P12755 |
|---|---|---|---|---|
| INSTITUTION CMC | SIDE W | FACILITY G | BLDG 23 | CELL 017L |
| TYPE OF TEST Lab | | | | DATE OF TEST 7/24/15 |

**YOUR TEST RESULTS HAVE BEEN EVALUATED BY A PHYSICIAN AND THE FOLLOWING HAS BEEN DETERMINED**

- [ ] Your test results are essentially within normal limits or are unchanged and no physician follow up is required.
- [ ] You are being scheduled for a follow up medical appointment. You will be receiving a ducat indicating your
- [ ] A repeat test will be ordered. You will be ducated for this test.
- [X] A chronic care appointment has been scheduled for you. You will be receiving a ducat indicating your

Additional Information

Guiang, C. MD
PRINTED NAME / TITLE

PRIMARY CARE PROVIDER SIGNATURE

SCOTT LEE, MD REVIEWED
JUL 29 2015

DATE:

*P. 12/14*

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|
| *A fee of $5.00 may be charged to your trust account for each health care visit.* |
| **If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.** |

REQUEST FOR:    MEDICAL ☑    MENTAL HEALTH ☐    DENTAL ☐    MEDICATION REFILL ☑

NAME *NGUYEN TIEN*    CDC NUMBER *P12755*    HOUSING *23/27L*

PATIENT SIGNATURE    DATE *5/13/15*

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)
*Infection of mucous membrane of nose + throat*
*② Request to discontinue losartan and Atenolon.*
*③ Med-Refill - Hydrocortion Naprosa - Naproxen 500*

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM.

---

CDCR: P12755    NGUYEN, TIEN
DOXAZOSIN MESYLATE    2 MG TABLET
MFG: CDCR Central Fill Pharmacy
Take one tablet by mouth every evening **KOP**

CMC    G  023  1000017L    West-Unit 4    KOP   AD9

rx#45730171802    06-24-2015    10 Refills until 4/28/2016

#30 1 of 1    CDCR Central Fill Pharmacy

09960

---

CDCR: P12755    NGUYEN, TIEN
ATENOLOL    25 MG TABLET
MFG: CDCR Central Fill Pharmacy
Take 1 tablet by mouth twice daily **KOP**

CMC    G  023  1000017L    West-Unit 4    KOP   U15

rx#45738055601    06-25-2015    11 Refills until 6/17/2016

#30 1 of 2    CDCR Central Fill Pharmacy

55357

---

CDCR: P12755    NGUYEN, TIEN
ATENOLOL    25 MG TABLET
MFG: CDCR Central Fill Pharmacy
Take 1 tablet by mouth twice daily **KOP**

CMC    G  023  1000017L    West-Unit 4    KOP   U15

rx#45738055601    06-25-2015    11 Refills until 6/17/2016

Dr.C. GUIANG-MD    May cause dizziness This drug may impair the ability to

#30 2 of 2    CDCR Central Fill Pharmacy

55372

---

CDCR: P12755    NGUYEN, TIEN
LOSARTAN POTASSIUM    50 MG TABLET
MFG: CDCR Central Fill Pharmacy
Take one tablet by mouth every evening **KOP**

CMC    G  023  1000017L    West-Unit 4    KOP   U15

rx#45738055801    06-25-2015    11 Refills until 6/17/2016

Dr.C. GUIANG-MD    May cause dizziness

#30 1 of 1    Inmate

66796

P 13/14

---

CDCR: P12755  NGUYEN, TIEN
ATENOLOL  25 MG TABLET
MFG: CDCR Central Fill Pharmacy
Take 1 tablet by mouth twice daily **KOP**

CMC    G  023  1000017L    West-Unit 4    KOP   U15

rx#45730113308    05-29-2015    1 Refills until 8/8/2015

Dr.C. GUIANG-MD    May cause dizziness This drug may impair the ability to operate a vehicle, vessel, or machinery. Use care until...

CDC 7362 (Rev.

*The CURSE of CMC-WEST UNIT HEALTH CARE KEEPS still following the plaintiff to Calif-MED. Facility*

*56*

---

CDCR: P12755    NGUYEN, TIEN
DOXAZOSIN MESYLATE    2 MG TABLET
MFG: CDCR Central Fill Pharmacy

Take one tablet by mouth every evening **KOP**

(CMF)    A  J    1000178LP  Cart 2 - J1, L3        KOP    AD9

rx#45768952501    01-26-2016    2 Refills until 4/28/2016        #30  1 of 1

Dr C GUIANG-MD   May cause drowsiness. Alcohol may intensify this effect. Use        CDCR Central Fill Pharmacy
care when operating a car or dangerous **HOLD MEDICATION** May cause ...        Box 588300 Elk Grove CA 95758

2  96110    0107540180

---

CDCR: P12755    NGUYEN, TIEN
ATENOLOL    25 MG TABLET
MFG: CDCR Central Fill Pharmacy

Take 1 tablet by mouth twice daily **KOP**

(CMF)    A  J    1000178LP  Cart 2 - J1, L3        KOP    AD9

rx#45768953101    01-26-2016    3 Refills until 6/17/2016        #30  2 of 2

Dr C GUIANG-MD   May cause dizziness this drug may impair the ability to        CDCR Central Fill Pharmacy
operate a vehicle vessel (e.g. boat), or machinery Use care until        Box 588300 Elk Grove CA 95758

2  56497    0107539435

---

CDCR: P12755    NGUYEN, TIEN
ATENOLOL    25 MG TABLET
MFG: CDCR Central Fill Pharmacy

Take 1 tablet by mouth twice daily **KOP**

(CMF)    A  J    1000178LP  Cart 2 - J1, L3        KOP    AD9

rx#45768953101    01-26-2016    3 Refills until 6/17/2016        #30  1 of 2

Dr C GUIANG-MD   May cause dizziness this drug may impair the ability to        CDCR Central Fill Pharmacy
operate a vehicle vessel (e.g. boat), or machinery Use care until        Box 588300 Elk Grove CA 95758

78  2  56494    0107539435

---

CDCR: P12755    NGUYEN, TIEN
LOSARTAN POTASSIUM    50 MG TABLET
MFG: CDCR Central Fill Pharmacy

Take one tablet by mouth every evening **KOP**

(CMF)    A  J    1000178LP  Cart 2 - J1, L3        KOP    AD9

rx#45768952801    01-26-2016    3 Refills until 6/17/2016        #30  1 of 1

Dr C GUIANG-MD   May cause dizziness        CDCR Central Fill Pharmacy
Box 588300 Elk Grove CA 95758

2  44381    0107539709

*57*

*Robert A. Barton, Inspector General*



*Office of the Inspector General*

August 18, 2014

Tien Nguyen P12755
California Men's Colony
P.O. Box 8101
San Luis Obispo CA 93409-8101

Dear Tien Nguyen:

The Office of the Inspector General has received your correspondence. We conducted a review into the issues you raised and determined no intervention is warranted by our office at this time.

While we conducted a review of your concerns, it is not possible for us to fully research and respond separately to each complaint. Therefore, we focus our resources on issues where the greatest need for our assistance exists. We believe that in this way we can provide the greatest benefit to you and others who have been affected.

If you have not done so already, we encourage you to continue using available administrative grievance remedies. Please contact your correctional counselor for advice and assistance regarding questions about the process or the status of your appeal/grievance.

If your appeal has been cancelled, and you dispute the reasons for cancelling your appeal, you may file a new appeal disputing the appeal coordinator's reasons for cancelation, explaining why the cancelation was improper or why the appeal should have been processed anyway. You should attach the original appeal and the cancelation notice with any documentation supporting your claim that the appeal was improperly rejected, and submit the whole package to the appeals coordinator. **Please be advised that you must allow 30 business days for a response to your appeal.**

Please note our new mailing address is as follows:
Office of the Inspector General
10111 Old Piacerville Road #110
Sacramento CA 95827

Thank you for bringing your concerns to our attention. The Office of the Inspector General considers this matter closed.

INTAKE AND REVIEW UNIT
Office of the Inspector General

SV: 14-0025664-01 (14-0001926-PI)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)                                                                                    **58**
                                                                                                        Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | *Cen. B* | *12-1218* | *7* |
| | FOR STAFF USE ONLY | | *R4* |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations, Title 15, Section (CCR) 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal.  If additional space is needed, only one CDCR Form 602-A will be accepted.  Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.                    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| *NGUYEN  TIEN* | *P12755* | *B2-150L* | *NA* |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

*Snaky and Cruel CCI Brown - Bldg B2.*

AUG 24 2012

**A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): *The main purpose of Prison Incarceration is to Re-educate, to Reform Convicted people and to Rehabilitate for future Safer Society - However CCI Brown rather takes*

**B.** Action requested (If you need more space, use Section B of the CDCR 602-A): *To keep pressuring on the I/m's Request for correspondence approval*

**Supporting Documents:** Refer to CCR 3084.3.

☐ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1063, Inmate Property Inventory; CDC 128-G, Classification Chrono):

☐ No, I have not attached any supporting documents.  Reason : *Several supporting documents will be attached after xerex-copying at interview-*

Inmate/Parolee Signature: _____  Date Submitted: _____

_____ By placing my initials in this box, I waive my right to receive an interview.

**C. First Level - Staff Use Only**                    Staff – Check One:  Is CDCR 602-A Attached?   ☐ Yes   ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section E.
☑ Rejected (See attached letter for instruction)  Date: *8/24/12*   Date: _____   Date: _____   Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the First Level of Review.

  Assigned to: _____  Title: _____  Date Assigned: _____  Date Due: _____

First Level Responder:  Complete a First Level response.  Include Interviewer's name, title, interview date, location, and complete the section below.

  Date of Interview: _____  Interview Location: _____

Your appeal issue is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____

  See attached letter.  If dissatisfied with First Level response, complete Section D.

Interviewer: _____  Title: _____  Signature: _____  Date completed: _____
              (Print Name)

Reviewer: _____  Title: _____  Signature: _____
           (Print Name)

Date received by AC: _____

| | AC Use Only |
|---|---|
| | Date mailed/delivered to appellant _____ / _____ / _____ |

STATE OF CALIFORNIA
INMATE PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | CEN-B | 12-1218 | 2 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.     WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): NGUYEN TIEN | CDC Number: P12755 | Unit/Cell Number: B2-150 | Assignment: |
|---|---|---|---|

**A. Continuation of CDCR 602, Section A only (Explain your issue)**: the Imprisonment uniquely in the sense of Penal/Penitentiary - CCI Brown might be more productive if assigned to work with the 'gooners' (typically as C/O Buck, very renowned in D yard-2011 for cold + hard character toward I/M's appeal to CDCR-Director level)

Surpassing C/O Buck by far, CCI Brown is more cunning, snaky, wily, cold, obdurate, lacking of sympathetic consciousness of other's distress, and lacks of desire to alleviate other's sorrow-

Her uncompromising character makes CCI a mechanical and lousy mentor. And when the time comes, unqualified counsel can bring big problem(s) to the prison Administration (one small example = the D2's Electrical system) I/M has all the document and proof for his saying here-

Inmate/Parolee Signature: _____ Tien Nguyen _____   Date Submitted: 8/21/12

**B. Continuation of CDCR 602, Section B only (Action requested):** _____

Inmate/Parolee Signature: _____   Date Submitted: _____

NGUYEN, TIEN M. # P12755
CENTINELA STATE PRISON
P.O. BOX: 931 - D3 - 106 L
IMPERIAL, CA. 92251

— GRIEVANCE —

1   TO WHOM IT MAY CONCERN.

2

3           THIS LETTER OF GRIEVANCE IS NOT AN ATTEMPT TO PAVE
4   THE WAY FOR A LAWSUIT BUT AN AGONIZING INVOCATION FOR
5   GOVERNMENT INVESTIGATION ON THE LINGERING CIRCUMSTANCE
6   AROUSED BY A DEEP CERTAINTY OF HAVING BEEN INFLECTED HARD-
7   SHIP & HARM. IT ALSO RESULTS FROM THE FACT THAT THIS
8   INMATE'S ABILITY FOR INTERNAL (PRISON) APPEAL EXHAUSTION
9   REGARDING DENTAL CARE COMPLAINT HAD BEEN UNJUSTLY UNDER
10  MINED AND DESTROYED BY FED. SOUTHERN DISTRICT IN YEAR 2006 Exh①
11          THE PRISONER IS ASKING FOR FORGIVENESS FOR THIS
12  IMPERTINENCE OF BURNING THE ECHELONS, BUT HE HAS BEEN
13  GIVEN THE LAST STRAW AND HE HAS ABSOLUTELY NO OTHER
14  OPTION LEFT TO MAKE HIMSELF HEARD OF.
15          INMATE'S VERY FIRST CONTACT WITH FACILITY 'D'
16  DENTAL CLINIC WAS IN THE LATE 2007'S. WHILE IN PREPARA
17  TION FOR THE VISIT, AND FOR FEAR OF LANGUAGE BARRIER AS
18  WELL AS FEAR OF NOT HAVING ENOUGH TIME TO EXPOSE HIS
19  TYPICALLY OUT-OF-ORDINARY TOOTH PROBLEM, SO HE WROTE
20  IN ADVANCE A SHORT NOTE TO THE DENTIST (LATER KNOWN
21  AS L. SMITH DDS). THAT SHORT LETTER WAS ASKING FOR DELI-
22  CATE TREATMENT AND QUICK RESTORATION OF DECAYED TOOTH.
23  NOT KNOWING, AT THE TIME, THAT THE DENTIST KEPT RANCOR
24  AT THE 2005'S LAWSUIT, EVENTHOUGH THAT LAWSUIT WAS
25  NOT AIMED AT THE DENTAL CLINIC AT ALL. Exh②. ②
26          DOCTOR L. SMITH IS THE DIRECTOR OF 'D' DENTAL
27  CLINIC. Mr L SMITH DDS'S BEHAVIOR TRANSPIRES MALICE,
28  VINDICTIVENESS AND CONSPIRACY. HIS POSITION ALLOWS
29  HIM TO PULL THE STRINGS BEHIND THE CURTAINS, DIRECTING
30  THE CLINIC PERSONNEL TO TAKE RETALIATION INSIDICUS
31  ON THE INMATE, AND INCITING OTHER DOCTORS, TYPICALLY

— 1 —

TYPICALLY DOCTOR J. PARKER TO TAKE "CAUSELESS REPRISAL" ON THE DEFENSELESS PRISONER.

THIS DENTAL CLINIC WAS ORIGINALLY EQUIPPED WITH ONE STATION THEN UPGRADED INTO TWO STATIONS (ABOUT 2008) THIS ALLOWS DOCTOR L. SMITH TO DIVIDE DENTAL PATIENTS INTO TWO CATEGORIES = THE PRIVILEGIOUS WILL BE PERSONALLY TREATED BY Dr. SMITH HIMSELF (OR REPLACEMENT COMING FROM CTC WHEN HE'S ON LEAVES). AT THIS STATION ALL and EVERY PATIENT OBTAIN 'AMOXILINE' ANTIBIOTIC FOR PRE-SURGERY (TO CURE ABSCESS FIRST) THEN AGAIN OBTAIN AMOXILINE ANTIBIOTIC AFTER TEETH EXTRACTION.

THE NON-PRIVILEGIOUS PATIENTS ARE DIRECTED TO THE 2nd STATION ATTENDED BY DOCTOR J. PARKER - HERE INMATE PATIENTS RECEIVE, IF ANY, OR IF EVER PRESCRIBED, ONLY GENERIC PENECILINE. THESE FACTS ARE LOGGED AT CENTINELA PHARMACY.

IN EARLY 2009, INMATE NGUYEN HAD ALREADY PREPARED TO SEND THE COMPLAINT WITH AFFIDAVIT ATTACHED TO INTERNAL AFFAIRS AND TO THE OMBUSMAN, BUT THEN ON SECOND THOUGHT DECIDED TO LET BYGONE BE BYGONE. THAT WAS A 'MISCUE' BECAUSE THE OTHER SIDE KEEPS HOLDING GRUDGE (FOR WHAT?) AND NEVER WANT TO LIFT UP THE CURSE 'TILL NOW, STILL - Exhib ③ original AFFIDAVIT (DEC 2008)

ALTHOUGH TITLE 15 OF CALIF. CODE OF REGULATIONS HAD MENTIONED AT EVERY SECTION CONCERNING I/ms' APPEALS "NO REPRISAL! NO RETALIATION!" BUT THE 'D' DENTAL CLINIC (L. SMITH, DDS - DIRECTOR and J. PARKER, DDS) UNDER THE GOVERNING OF Mrs C. COOK, Dental Program Specialst (DPS) KEEP REVENGE AND REPRISAL ON THE APPELLANT-PLAINTIFF OF THE YEAR 2005.

◇ JUST RECENTLY, SEPT. 30-2010 THE INMATE TURNED IN A DENTAL CARE REQUEST CDC 7362 CLAIMING: "LOWER JAW TOOTHACHE AFTER MONTHS OF EDGING TO HOT AND COLD FOODS& DRINKS - START INFECTING 2 DAYS AGO."

SO Dr. PARKER GAVE AN APPOINTMENT FOR THE DATE OCT. 4. 10 - IT WAS A TEN-MINUTE PERFUNCTORY EXAM.

— 2 —

THAT ENDED WITH PRESCRIBTION OF PAIN KILLER I.B. 600 mg,
ONLY. NO ANTIBIOTIC MEDECINE-
        THREE DAYS LATER THE INMATE RECEIVED THIS NOTIFICATION

---

STATE OF CALIFORNIA
**DENTAL EXAM ELIGIBILITY NOTIFICATION**                DEPARTMENT OF CORRECTIONS AND REHABILITATION

INMATE NAME:   (Last, First, MI)          CDC #:          HOUSING:              INSTITUTION ACRONYM:
NGUYEN, TIEN                              P12755          D3-106L               CEN

You are eligible for a comprehensive dental examination.

If you would like to receive an examination please write "I want a dental exam" on a CDCR Form 7362
Health Care Services Request for Treatment and turn it in.

You will NOT be charged a $5 co-pay for the dental examination.

If you do not want to receive a comprehensive dental examination at this time, you may still submit a
CDCR Form 7362 at any time you feel you need urgent dental care.

DATE: 10/7/2010         The very 1st time issued in CEN.

---

13  THIS IS A SELF-INVENTED, BOGUS FORM THAT THE CDCR WOULD
14  NEVER ISSUED FOR THE FOLLOWING REASONABLE REASONS:
15  ①-WITH THE EXCEPTION FOR THE 'MEMORANDUM', ANY OTHER
16  GENUINE CDC FORM MUST HAVE A CDC NUMBER #
17  ②-COMPUTER WORD-PROCESSING PROGRAM CAN PRODUCE PRINT
18  OUT FORMS LOOKING JUST LIKE REAL CDC FORMS. BUT IF WE
19  MADE A SIMILE AND PUT A FAKE NUMBER ON IT, WE MIGHT
20  GO TO JAIL FOR A LONG TERM! THAT WHY...
21  ③-THE CONTENT OF THIS 'NOTIFICATION' EMITS ODOR OF SCAM
22  AND OF POOR JUDGMENT
23  ———[A]— IN THE MEMO DATED OCT.16.2008 ISSUED UNDER
24  THE AUTHORITY OF Mrs C. COOK-DENTAL PROGRAM SPECIALIST
25  IT WAS STATED: "TREATMENT PLAN WAS GENERATED AND A
26  PANOREX (X-RAY) ORDERED THAT WILL ASSIST THE DENTIST IN
27  CONFIRMING YOUR RESTORATION TREATMENT PLAN" Exhib Ⓖ
28  THEREAFTER, Dr PARKER GAVE IN TOTAL SIX VISITS, AND ADDED
29  UP A LOT OF SINGULAR X-RAY AT (OR OF) THE SEVENTEEN (17)
30  TEETH LEFT ON BOTH UPPER AND LOWER JAWS.
31            NOW THE 'NOTIFICATION' RECOMMENDS "IF YOU

— 3 —

WOULD LIKE TO RECEIVE AN EXAMINATION. PLEASE WRITE "I WANT A DENTAL EXAM." → ONE MIGHT WORRY THAT THE DENTISTS L. SMITH AND J. PARKER ARE NOT DDS AS CLAIMED, BUT MUST RATHER BE 'UNDERGRADUATE' DENTISTS INSTEAD.

1  FOR A SMART REAL DENTIST, IT SUFFICES SOME
2  X-RAY'S AND ONE OR TWO EXAMS TO REALISE WHAT THE PROBLEMS
3  ARE AND TO LAY OUT A COMPREHENSIVE PLANNING FOR TREATMENT.
4  DELAYING TREATMENT IS INTENTIONALLY SAPPING
5  THE INMATE'S HEALTH, IS JEOPARDIZING HIS LIFE BECAUSE OF
6  INABILITY TO CHEW FOODS.
7  ——— ⑧ — THE MCS PROCEDURES FOR HEALTH HAD STATED:
8  "COPAYMENT PROGRAM = I/M PATIENTS SHALL BE CHARGED A FEE
9  OF $5.00 FOR EACH I/M PATIENT'S INITIATED H.C. SERVICE."
10  NOW THIS NOTIFICATION IS LURING I/M PATIENT INTO MULTIPLE
11  INITIATED REQUESTS AND THEREOF WILL BE CHARGED WITH MULTI-
12  PLICITY OF CO-PAYMENTS TO CENTINELA DENTIST ASSOCIATION!
13  IF THIS SCHEME WORKS SMOOTHLY ON THIS INSTANT
14  CASE, IT WILL BE APPLIED TO THOUSAND OF OTHER CASES, ESP.
15  THE INDIGENTS WITH ZERO DIME IN TRUST FUND, THEN THE
16  CEN PRISON'S DENTAL PROGRAM GONNA CASH-IN PLENTY FROM
17  GOVERNMENT SUBSIDIES.
18  ④ - THIS 'NOTIFICATION' IS A CATCH 22 — WHATSOEVER WE PUT
19  ON CDC 7362, EITHER "I WANT A DENTAL EXAM" OR "I NEED URGENT
20  DENTAL CARE", THIS DENTAL CLINIC ALWAYS HAVE GOOD EXCUSES
21  TO RETARD TREATMENT, BECAUSE THEY CAN'T GIVE TREATMENT
22  WITHOUT SOME VERY COMPREHENSIVE DENTAL EXAMS.
23  ⑤ - THE PROCESS USED IN DENTAL CARE HERE ORIGINATES
24  A CRIME AGAINST ADA = ONE COULD BE BLIND; ONE COULD BE
25  DEAF OR HARD OF HEARING; ONE COULD HAVE A LEG IMPUTA-
26  TED. THOSE ARE IMPAIRED, HANDICAPED AND DISABLED. THUS, WHEN
27  WE HAVE MAJOR DENTAL PROBLEMS, WE BECOME MANDIBULICAPED
28  WE ARE DISABLED, WE HAVE CHEWING & EATING IMPAIRMENTS
29  THE DENTISTS WHO TAKE EXCUSES TO DELAY CURING OUR DENTAL
30  ACUTE PAIN ARE THE PERPETRATORS ENJOYING AT OUR SUF-
31  FERINGS AND SEEKING OUR SLOW DEATH.

— 4 —

THE INMATE HAS SO GREAT ESTEEM FOR THE

1 WORDS OF THE OHIO ASSOCIATE SOLICITOR STEPHEN P. CARNEY

2 THAT HE WOULD TAKE THEM HERE AS A CONCLUSION OF THE

3 BRIEF : « Inmate GRIEVANCE SYSTEM IS ONE OF THE STATE's

4 MOST IMPORTANT TOOLS IN PRISON MANAGEMENT — SUCH

5 PROCEDURES SERVE AS EARLY WARNING SYSTEM FOR PRO-

6 BLEMS BIG OR SMALL AND HIGHLIGHT OPERATIONAL PRO-

7 BLEMS BEFORE SERIOUS HARM OCCURS. »

8        AS FOR THE PLAINTIFF ALL WHAT IS WISHED IS

9 THAT THE DENTISTS COOL IT DOWN, STOP BETTING ON

10 WICKED, EVIL PROJECTS, KEEP FREQUENTING THE "VIEJA

11 CASINO IF YOU REALY NEED MORE MONEY FOR LIVING,

12 AND TO REPENT FROM SUCH CAPITAL SINS LIKE VENGENCE

13 AND HATRED.

14        FOR NOT HAVING TO FOLLOW A PROCEDURE AS

15 STRICT AS IN CIVIL LAWSUIT WHERE COPIES OF THE BRIEF

16 SUBMITTED TO COURT MUST ALSO BE SERVED TO DEFENDANT

17 THROUGH THE COURT MARSHALL'S SERVICE — HERE - A

18 COPY OF THE COMPLAINT WILL BE SERVED, WHEN REQUIRED

19 TO THE PARTY INVOLVED THROUGH POSTAL SERVICE.

20

21 DATED : Oct. 14-2010        Tien Nguyen

22                             TIEN MINH NGUYEN

23 POST SCRIPT: ON OCT 13 I/M RUN AROUND ASKING FOR TYPEWRITER TO

24 WORK ON 'GRIEVANCE' - SOMEONE MUST HAVE INFORMED THE CLINIC.

25 THERE FROM J PARKER DDS HURRIED GIVING THE I/M APPOINTMENT

26 FOR MONDAY 10-18-10 THOUGH I/M HAD NOT TURNED-IN CDC 7362

27 AS ORDERED BY THE 'INFAMOUS NOTIFICATION' - TWO YEARS OF DELAY

28 TREATMENT + DOZEN OF VISITS LEADING TO NO-WHERE ARE BAD ENOUGH

29 IT IS TOO LATE TO DISCULP THEMSELVES FROM THE BIG MESS WITH

30 WHATEVER THEY MAY OFFER NOW — ( TM Oct-15-10 )

31

— 5/5 —

PRISON LAW OFFICE
General Delivery    *We return your original letter
San Quentin, CA 9496    and any docs we received.
*No copies kept.*

RECEIVED
JAN 2 6 2011
By

Dear Sir or Madam:

    Thankyou for your letter of Dec 24-10 expressing your concern about my case.

    After receiving the response from the Division of Adult Institution. Sacramento, I'm now feeling like I have no other option than to take the case to Court.

    As you can see here, included, is the third letter addressed to Office of 3rd Level Appeals with all the documents affixed confirming the several I/M's attempts to resolve adverse processing decision by CEN Dental Program; the 'D' Facility Dental Clinic, under the governing of DPS. Mrs. C. Cook, to be more specific.

    I/M patient has been a target for discrimination and of continuous harassment and 'causeless' retaliation therefrom has endured more than two years of actual 'dry.Run' dental visitations. You can verify by the date of the first App. 602 HC dated Oct-17-2008 where the 1st line stated: "I/M's initial request dated NOV.2007, for....." and Dental Record of twenty dental appointments, including some which were canceled.

Five months after dental care initial Request and still in the stage of "Triage" does not meet requirement set by the 2006 Perez case Court order.

This clearly indicates continuous denial of adequate



STATE OF CALIFORNIA · DEPT OF CORRECTIONS    CDO·129·
INMATE PASS · **PRIORITY Dental**    CENTINELA
JOB INFO: TRIAGE
NAME: NGUYEN    CDC#: JP.12756    HOUSING: D4/146
ISSUED BY: Dr. L. Smith    **Lieutenant White**
PASS TO: D-Dental    DATE: 03/04/2008    TIME: 14:15
REASON: Dental Appt    Nurse says Reschedule
ARRIVAL TIME:    RECORDED BY:
DEPART TO:    TIME:    RECORDED BY:

dental treatment. The whole negative process causing deep collateral consequences on this elderly I/M of 73 year old and burdened with a sentence to life imprisonment. Damage already done: irreparable internal injuries such aggravating previous stomach ulcer, indigestion problems, and especially mental depress and psycho & mental distress,

~ 1 ~

63

The whole scheme projected by the gang of four is to inducing this inmate into Civil Law Suit, luring the I/m into litigation against the prison so that he will never again get bona fide help from Prison Dental Program anywhere and wherever what prison he will stay.

Long before the fight's being declared, the now accused wrong-doers had braced themselves w/ ploys against the laws and Regulations. It is futile for I/m to go back to the 1st steps of prison Appeals. Title 15§3084 Besides we already obtained the Formal 2nd Level App's Response. Also the Third Level Appeals had considered this I/M's Return Argument to the Warden's Office Response All those justify the Exhaustion.

There is no witness for the plaintiff in this present case, however, the facts, (part of them cited in the Affidavit), the aborted 602 HC Appeals, the documents appended, and a close look into the dental record and treatment schedule of attending dentist(s) would have shed enough light on the unfairness and malice from the CEN Dental Program pouring on this diffrenchised human being during all these years.

I/M Nguyen, the undersigned, greatly appreciates your offer for help, and has great wish that PLO would take this case to Court in behalf of the unexperienced plaintiff involved in litigation that he is, and to take action under 42 USC-sect. 1983, seeking only for Court Injunction, and $1⁰⁰ Tort, if necessary-

Eager to hear from your advice-

Dated  Jan 12-2011

P.S. And we should not forget that the "notification slip" cited in the GRIEVANCE is the ploy that triggered the litigation-

TIEN  MINH  NGUYEN
CDCR # P12755
Centinela State Prison
P.O.Box 931-D3-106
Imperial, CA 92251



STATE OF CALIFORNIA
PRISON HEALTH CARE SERVICES

J. Clark Kelso, Receiver



January 18, 2011

Mr. Tien Nguyen, P-12755
Centinela State Prison
P.O. Box 731
Imperial, CA 92251-0731

Dear Mr. Nguyen:

This is in response to your correspondence dated October 15 and December 6, 2010, addressed to the Director of Appeals and Office of Third Level Appeals, regarding the dental care and treatment you are receiving while incarcerated at Centinela State Prison (CEN), California Department of Corrections and Rehabilitation (CDCR). Your correspondence was forwarded to the Controlled Correspondence Unit (CCU), Prison Health Care Services for review. I have been asked to respond to your concerns.

In your correspondence you state:

- Privileged inmate-patient's receive antibiotics for pre-surgery and again after teeth extractions.
- Non-privileged inmate-patient's go to a 2nd station and receive generic penicillin.
- You were seen and examined on October 4, 2010, for a toothache at which time you were prescribed pain medication.
- You received a Dental Exam Eligibility Notification; however, you state this is a "bogus" form CDCR would never issue.
- You were notified an x-ray was ordered to help assist the dentist in confirming your restoration treatment plan.
- You feel L. Smith and I. Parker are not full dentists and are only undergraduate dentists instead.
- Dental staff creates excuses to delay a patient-inmate's dental treatment.
- You attached documents pertaining to your disagreement regarding your dental treatment.

You request immediate intervention on your behalf in order to receive the dental treatment you deserve.

CCU contacted CEN health care staff who provided documentation from your Unit Health Record (UHR) and health care appeal history for review. In your letters, you state that privileged patient-inmates receive amoxicillin before and after extractions and non-privileged patient-inmates may receive generic penicillin. Please be advised antibiotic regimens can vary due to different health problems patient-inmates may have. Some may require pre and post operative medication and some may not. The medications you listed are both antibiotics and are prescribed at the dental provider's discretion. It is not a case of privileged vs. non-privileged. On October 4th, 2010, you were seen in the dental clinic and prescribed pain medication, but no antibiotics. As stated above, antibiotics are prescribed at the dental provider's discretion. In addition, you stated you were sent a "bogus" CDCR form. The Exam Notification you received is a new form created by the CDCR Dental Program to inform patient-inmates they are eligible to receive a comprehensive exam if they wish to have one. Furthermore, you also stated an x-ray was ordered to assist the dentist in confirming your



Mr. Tien Nguyen, P-12755
January 18, 2011
Page 2

treatment plan. This is a reasonable request. It would be poor practice for a dentist to implement a treatment plan with no x-rays to confirm decay, infection or any other conditions which may be present. You feel that L. Smith and I. Parker are not real dentists, but "undergraduate dentists". CDCR does not hire dental students or "undergraduates" to work as dentists in the clinics. The Inmate Dental Services Program (IDSP) Policies and Procedures Manual, Chapter 4.2, Section IV, A, states in part: *Applicants are not eligible for employment without proof of current licensure, certification and/or credentials.* You also feel staff creates excuses to delay treatment. You have been seen in the clinic several times between March of 2009 and October of 2010. Twice you have refused treatment. Your triage visits appear to have been scheduled in a timely manner. Based on the information received and reviewed, it appears CEN dental staff is providing for your dental care and treatment needs.

Please be advised, while you have a right to request treatment, it is inappropriate for a patient to recommend a treatment plan, or specific medications, and then expect the dentist to implement that request. This decision is based on the criteria set forth in California Code of Regulations, Title 15 § 3354(a), which states in part: *(a) Authorized Staff. Only facility-employed health care staff, contractors paid to perform health services for the facility, or persons employed as health care consultants shall be permitted, within the scope of their licensure, to diagnose illness or prescribe medication and health care treatment for inmates. No other personnel or inmates may do so.*

The inmate appeal process described in the California Code of Regulations, Title 15, is an important part of the steps available for inmates to resolve matters that affect their welfare while in prison. Inmate health care appeals are reviewed and answered carefully and thoroughly. A review of the appeals history at CEN indicates you have not filed any health care appeals regarding the issues you wrote about.

If you need further health care services, you should use the "sick call" process by completing a *Health Care Services Request Form*, CDC 7362, to request an appointment with health care staff.

I hope this information has been of assistance to you.

Sincerely,

Y. Aguila

Y. AGUILA
Staff Services Manager I
Controlled Correspondence Unit

cc:    Regional Administrator, Southern
       Deputy Medical Executive, Southern
       Regional Dental Director, Region IV
       Deputy Statewide Dental Director
       Chief Executive Officer – Health Care, CEN
       Supervising Dentist, CEN

*To be fair you should have sent copies of this letter together with copies of the I/M Grievance attached to it. Matter-facts you took some of the I/M's statements out of context and you'd sent copies of your correspondence to the eight cardinal point of the World for purpose to stigmatize defenseless inmate plaintiff is a cheap shot.*

*2/1/2011*

*TIEN M. NGUYEN*
*CDCR # P12755*

---

P.O. Box 4038 • Sacramento, CA 95812-4038

TO: PRISON HEALTH CARE SERVICES
P.O. BOX 4038 - SACRAMENTO
CA 95812-4038

Dear Manager, Sir:

The inmate plaintiff is sincerely humble in receiving the response from high ranking official of the Agency~

However some of the I/M plaintiff's statements had been either misunderstood, misinterpreted or even distorted.

This I/M patient's Dental Record might have noted and shown that he had have dental X-Ray (in prison) way back in Dec 1998 at Delano Reception Cntr. North Kern County and had received treatment and antibiotics. Then, transferred to CEN Level 4. Facility `C', he'd been subjected to several X-Rays (Flank & Front) for TB check those took place in Feb 5th 1999.

Subsequently, in 2008, after receiving the memo from Dental Prog. Specialist, I/M obediently took Panorex X-Rays an dozen of singular tooth XRays. He knows the limits of usefulness and harmfulness of the process, and he is and was not scared. But there was one time, and for good reason, he'd refused when ordered by Dr. L Smith. This happened back in Nov. 2007, ironically this occured at the very first and happy dental appointment this I/M had ever had in CEN. Facility `D'. Dental Office since his transfer.

While sitting in waiting cell, the dental nurse brought to him some kinds of verification forms to fillout. In exchange, I/M handed a written note for nurse to take to Dentist@whoever he could have been. The note implored for crown restoration, therefore I/M didn't see any necessity of XRay, besides he just checked a (NO) on the fill-out forms. At the time, the Perez Court Order had not been made known widely to general population (just in law Library). And you may have remembered that the pink colored CDCR 602 HC had not even been created until mid 2008. Also, prior to year 2007 there was absolutely no approval for filling of root-canal cavities - at least in our men prisons. Either you yourself decided to save it or to get it pulled off - no middle way~

FN= Only months later   - 1 ~ that Dentist's name'd be known

After a quick check, Dr. L. Smith ordered "you need an X-RAY" but had not given any orientation any guidance or any advice. I/M refused and the dentist showed him out.

Because of his very first dental visit in CEN Prison, this I/M frankly had no idea that "It is inappropriate --- To request specific treatment plan" like he would and could have done in "the streets" (i.e. asking for gold crown, or bridging, bonding of loosen front teeth, pulling only 2 out of 5 badly rotten molars etc---) And I/M would have appologised if he were told in 2007.

On the other hand the CEN Dental staff, being well alerted by both the Perez v. Tilton case and the though unsuccessful, law suit action against the MTA desk Nurse - Clinic Coordinator - for deliberate indifference and cruel & unusual punishment (impeding his access to dental care in 2004) of course had been bracing themselves up with preventive measures and with necessary legal stratagems to cover their arses and to save their skins. During those times of dental nuisance to this inmate, Mrs C. Cook was globally in charge of the entire HC. Appeals; only later, by the late 2008 that she became specifically Dental Prog. Specialist.

You can visualize what kind of preventive measures, what type of recommendations what way of treating and actions toward the black-listed I/M Nguyen P)2755

Goodwill people would not hold grudge that long. And it seems that genetic imbalance make people become rancourous, and hatred and inclined to revenge or discrimination.

Now you would wonder: the I/M having experienced complet fiasco in his 2005 law suit, then being fully aware of CEN Dental Program to have had implementing necessary measures to cover their butts, why would he let himself written up w/ CDC 128 for refusing visit on Dec. 8. 2009? Answere is it was to carve a notch in Time as proof of being victimized for retaliation with continuous dry-run dental visits.

As for the second Refuse, treatment Oct 14-10

— 2 —   it was refuse of

was too late for a make-up. This had been explained in the 'Post script' section of the original Grievance. Let I/M try to describe again how it had happened-

— Sept 30-10 I/M Turned in CDC 7362 claiming toothache
— Oct 4-10 . Dr. J Parker gave perfunctory Exam + painkiller no pull out, no Treatment.
— Oct 7-10 issuance (and receiving) of Exam Notification
— Oct 13-10 I/M finished working on the complaint and there was news leaking to Dental Clinic, facility D -
— Oct 14-10 I/M received DUCAT for treatment set for 10-18-10.

—Hypothetically speaking, suppose someone had bullied you for more than two years, suddenly changed attitude when he learned you just hit a lottery jackpot would you take him into the circle of your best friends? would you let him get away with all he did in the past?

The issuance of the Exam Notification was the 'last drop' triggering the Grievance. Even if it were a new form created by CDCR Dental Program, I/M still don't see any logic, or any good reason to send it to a patient who just had a visit just two and half days earlier. Besides, how much comprehensive is to be enough comprehensive examination? You took all kinds of X-Rays - You'd checked on teeth decay, you already made a Triage, you ran your gloved fingers back and forth along this I/M's jaw bones, you gave a dental cleaning, you knocked the fragil front teeth with the metalic prope, and you watched & waited for his teeth to roten together with him, what more is needed to be comprehensive. more harassment may be. It may happened that there were creation of such a form for purpose of Orientation with new patients or with new fishes in Reception Cntrs. but not for someone or anyone pending at the gallows for two years - And while the gist of the overall complaint was and still is: the illicit issuance of this 'small' piece paper, the CDCR Health Care Services management should better find the author of the Low blow, rather than take responsibility (of new inovation) to itself -

— 3 —

with regard to the use of the word 'undergraduate', this I/M had provided explanation that is was a taunting remark to emphasize the overly lengthy delay in treatment. Long before shouting foul, I/M had gone through the New MSA - Chap. 4 - Art. VI about Med. Staff Organization.

Now, going back a little, the I/M law suit in pro-per against only the staff members called MTAs, unfortunately got tangled w/ CEN H.C. because HC Appeals Coordinator at the time embrased both Health & Dental. The 1st copy of the action was sent to Mrs Melching in Dec 2004. Then, May 2005 the Fed Dist. Court for southern Calif. sent another copy to New Director, Mrs Woodforth, coming from San Quentin.

Mr Kelso's HCS got federal order to take over the CA's Prison HC only around mid 2007, therefore your management has missed a big part of the story of dispute, of feud and retaliation and vegeance between whoever who had felt some conflict of interest, or who had handled HC appeals in those days.

From there, it's a little bit difficult for your management to comprehend why and how the "CEN Dental staff creates excuses to delay a patient-inmate's dental treatment". By the way, what the plaintiff specifically said was: "to delay to this I/M patient..." He was not complaining for the whole prison population so far.

Not to mention that the factors Time and Distance caused great difficulty for you to obtain substantiative results in investigations, and to gain good insight into what had been brewing down here for years. Result is your correspondence's opinions and judgments are mostly based and leaned on 'un-noble', undependable, unreli-able, untrustworthy sources' reports. Especially when the informations came from the CEN Supervising Dentist.

Sincerely,

TIEN MINH NGUYEN
CDCR # P19755
Centinela State Prison

Dated. Jan 31-2011

— 4 —

73

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION    Filed 09/28/15    Page 61 of 64    Page ID #:61                                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
P.O. Box 942883
Sacramento, CA 94283-0001



December 22, 2010


Mr. T. Nguyen
CDCR P12755
Centinela State Prison
P.O. Box 931-D3-106L
Imperial, Ca 92251

Mr. Nguyen:

Your letter addressed to the Director of the Department of Corrections has been forwarded to me for response.

In your letter you allege misconduct and misrepresentation of reports by several dentists in your Facility, at Centinela State Prison (CEN). We understand your concern and appreciate you having taken the time to submit the information.

Your complaint alleges that you have received inadequate care, inaccurate informational hand outs, and harassment during dental procedures, as well as several dentists acting unprofessional during treatments.

The California Department of Corrections and Rehabilitation (CDCR) have several ways in which staff complaints are handled. Each institution has an office that investigates staff complaints. The Department's Office of Internal Affairs investigates more serious staff misconduct, and the Office of the Inspector General of the State of California is actively involved in investigations within CDCR. Complete and accurate information such as dates, times, descriptions, and witnesses are necessary to initiate a formal investigation. Allegations absent this critical information are difficult to address. The above-named entities consistently investigate situations throughout the State. Appropriate action is taken when enough evidence is available to corroborate wrong doing by staff or inmates.

A fact-finding investigation concerning this matter might be conducted at the institutional level. All the individuals with information pertinent to your complaint might be interviewed. All staff personnel matters are confidential; as such, the details of any inquiries will not be shared with staff, members of the public, or Inmates. The CDCR recognizes the importance of maintaining a high level of staff conduct and professionalism at all times.

*74*

Mr. T. Nguyen
Page 2

The California Code of Regulations, Title 15, Article 8, Subsection 3084.1, Right to
Appeal, (a) states in part, "Any inmate or parolee under the department's jurisdiction
may appeal any department decision, action, condition, or policy, which they can
demonstrate as having an adverse effect upon their welfare."

Per Title 15, Section 3084.2, "Appeal Preparation," an Inmate/Parolee Appeal alleging
misconduct by a departmental peace officer is considered to be a Citizen's Complaint.
Therefore, an inmate/parolee wishing to file a Citizen's Complaint shall utilize the
existing departmental appeals procedure utilizing the CDCR Form 602, Inmate/Parolee
Appeal Form, to describe the problem and action requested.   The guidelines
documented in CDCR, Title 15, Section 3084 must be strictly adhered to.

If you have any questions or require additional information, please contact
me at P.O. Box 942883, Sacramento, CA  94283-0001.

Sincerely,

B WILBUR
Correctional Lieutenant
General Population Levels III/IV
Division of Adult Institutions

cc: Domingo Uribe, Jr., Warden (A), Centinela State Prison



75

OFFICE OF THIRD LEVEL APPEALS
P.O. BOX 4038
SACRAMENTO, CA 95812-4038

Dear Sir or Madam:

With regard to my case in 'Grievance' the common sense would pose a question that if the I/M patient really has serious dental problems, why now, wouldn't he continue requesting for dental care to get relief from recurrent or crucial gnawing pains.

Here you can see from the Memo (Informal Level Response - Oct 16-2008 - attached to the Grievance) that the more the inmate presented his dental care concerns, the more the CEN. Dental Program — under the instructions and directions of both the Program Specialist & Supervising Dentist, Dr. Peters — would pickup more provocative and harassing actions i.e. stretching to indefinit time the Examination stage by using their expertise and professionalist judgments/or giving innumberable excuses — Throughout her argumentation, the Dental Prog. Specialist had proven herself to be not only astute but also cunning and fallacious. This gang of four will someday harm themselves even more by continuing this lifestyle with their hypocrisy.

Many tribes-people sharpen their front teeth w/aid of abrasive stones and still can live their whole life with the inconvenience [in our point of view]. So I/M Nguyen can as well endure stoically his dental sufferings for all the years left of his lifetime. But here, the point is where's duty accomplishment, where are humanity and fairness from the part of the practitioners toward the prisoner patients?

Included in this mailing are the following documents:
— Dental Appeal Informal Response, dated Jan 24-2008
— Xerox copies of DUCATs proving the Dental Care discrimination.
— Two (2) Informal Level App. (CDCR 602 HC) dated Oct 17-2008 and Dec 19-2008 for the second one.

Respectfully submitted.

Dated: Dec 06-2010

Tien Minh Nguyen
CDCR # P12755

Case 2:15-cv-07600-PSG-AS    Document 1    Filed 09/28/15    Page 52 of 64    Page ID #:52

*Originally in*
*Pink colored paper*

76

STATE OF CALIFORNIA
**INMATE/PAROLEE HEALTH CARE**
**APPEAL FORM**
CDCR 602 HC (6/08)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
PRISON HEALTH CARE SERVICES

Side 1

Location: Institution/Parole Region:    Log #:    Category:
1. _____    1. _____
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. This form shall be used when the policy, action or decision being appealed involves health care services (medical, dental, or mental health services). You must first informally seek relief through discussion with the appropriate staff member or by utilizing the health care service processes at your institution. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Health Care Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibility.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| NGUYEN TIEN | P12755 | On standby list | D3-104L |

A. Describe Problem: I/M's Initial Request dated Nov 2007 for Crown Restoration of one worn out tooth is being neglected in REPRISAL of the 2005 Law suit. This tooth is the unique one left from upper jaw enabling I/M to chew food and all it'd take is one drop of composite Resin. Within their professionalism, Dentists have independent judgment + exclusive decision to delay or to speed up dental care process. However the Resonableness is still verifiable by the HCR Committee. Since Dentists are (plastic) surgeons operating on 32 Human Body Parts that have direct access on neuro system (the part closest to the brains) and since Dentists are permanently assigned to each Facility clinic until Retirement.

If you need more space, attach one additional sheet.

B. Action Requested: ① Since I/M has longtime Stomach Ulcer history, it's urgently needed to have at least one pair available for chewing food. ② Also is Requested for the Dentists to be allowed to have their Proper Names displayed at Dental Clinic, and to provide the Dentist with "verification slips" to hand out to dental patients after each dental visit so as to avoid unecessary delays on med necessity causing adverse effect upon I/Ms

Inmate/Parolee Signature: _M. Nguyen_    Date Submitted: 10/1/08

C. INFORMAL LEVEL (Date Received OCT 09 2008

Staff Response:

## PLEASE SEE ATTACHED MEMORANDUM

Staff Signature: C. Coe, HPS, Dental    Date Returned to Inmate: 10/15/08

OCT 17 2008

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Health Care Service Request Form, CDC 7362, Comprehensive Accommodation Chrono, CDC 7410, Trust Account Statement, etc.) and submit for processing to the Health Care Appeals Coordinator at your location within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

RECEIVED Inf. OCT -9 2008    COMPLETED Inf. OCT 17 2008

CDCR Appeal Number

08-11711

STATE OF CALIFORNIA
INMATE/PAROLEE HEALTH CARE
APPEAL FORM
DCR 602-HC (6/08)

Case 2:15-cv-07600-PSG-AS    Document 1    Filed 09/28/15    Page 53 of 64    Page ID

DEPARTMENT OF CORRECTIONS AND REHABILITATION
PRISON HEALTH CARE SERVICES

Side 2

---

**FIRST LEVEL:** ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

E.  **REVIEWER'S ACTION (Complete with 15 working days):** Date assigned: _____   Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

_____

Staff Signature: _____   Title: _____   Date: _____

Division Head Approval:
Staff Signature: _____   Title: _____   Date Returned to Inmate: _____

F.  If dissatisfied, explain reasons for requesting a Second-Level Review, and submit for processing to the Health Care Appeals coordinator at your location within 15 days of receipt of response:

_____

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

---

**SECOND LEVEL:** ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

G.  **REVIEWER'S ACTION  (Complete with 10 working days):** Date assigned: _____   Due Date: _____
☐ See Attached Letter
Signature: _____   Date Submitted: _____
Health Care Services
Hiring Authority Signature: _____   Title: _____   Date Returned to Inmate: _____

H.  If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

---

For the Director's Review of Health Care issues, submit all documents to:      Office of Third Level Appeals – Health Care
                                                                                P O Box 4038
                                                                                Sacramento, CA 95812-4038

**DIRECTOR'S ACTION:** ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

Date: _____

STATE OF CALIFORNIA                                                              DEPARTMENT OF CORRECTIONS

CENTINELA STATE PRISON/IMPERIAL

# *MEMORANDUM*

**APPEAL RESPONSE LEVEL:**      FIRST

**DATE:**                       Monday, January 24, 2005

**TO:**                         NGUYEN, TIEN

**CDC #:**                      P12755

**APPEAL LOG #:**               D-04-01848

**ISSUE APPEALED:**             Mental Health

**INTERVIEW:**

You were interviewed on 1/20/05, by C. Cook, Staff Services Analyst with the Inmate Medical Appeals Tracking Program, regarding your appeal issue.

**PROBLEM DESCRIPTION / ACTION REQUESTED:**

You are requesting a mental health consultation, unassignment from vocational small engine repair due to vision and hearing limitations and medication, claim you should not have been assigned to vocational auto paint due to respiratory problems, request to be unassigned, and complain that it took over a month for a dental appointment - so you pulled your own tooth.

**APPEAL RESPONSE:**

1) You have been scheduled for a mental health consultation and should be ducated within the next two weeks.
2) You do not have any visual or hearing limitation chronos. *? Exhibit*
3) You have a respirator clearance chrono dated 11/24/04 that is valid for one year, copy attached. A copy has also been provided to your correctional counselor to assist him/her in determining an appropriate assignment.
4) There is no recommendation for medical unassignment. You have a physical limitation chrono dated 11/24/04 that is valid for one year, copy attached. A copy has also been provided to your correctional counselor to assist him/her in determining an appropriate assignment.
5) Most of our dental clinics are four to six weeks backlogged and any dental emergencies are seen forthwith. You should have reported to the medical clinic on your yard if you were having a dental emergency that could not wait for a regular appointment. *Then why several ducats had been issued and at same period of time the appellant's cellies got their dental problems solved within weeks?*

**APPEAL DECISION:** Partially Granted

_____                          _____
D. Thornton, M.D.                                C. Cook
Staff Physician                                  Medical Appeals Coordinator

STATE OF CALIFORNIA
**INMATE/PAROLEE HEALTH CARE**
**APPEAL FORM**
(CDCR 602-HC (6/04))

DEPARTMENT OF CORRECTIONS AND REHABILITATION
PRISON HEALTH CARE SERVICES

Side 1

Location: Institution/Parole Region: _____  Log #: _____  Category: _____
1. _____  1. _____  1. _____
2. _____  2. _____  2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. This form shall be used when the policy, action or decision being appealed involves health care services (medical, dental, or mental health services). You must first informally seek relief through discussion with the appropriate staff member or by utilizing the health care service processes at you institution. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Health Care Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibility.

| NAME NGUYEN T. | NUMBER P-12755 | ASSIGNMENT "on Standby list" | UNIT/ROOM NUMBER D3-104L |

A. Describe Problem: REF: 602-HC dated Oct-1-08, and Memo. HPSI-Oct-16-08
The "Teeth Cleaning" on Fri 11-21-08 bleeded the gum and exposed several teeth's sensitive spots, Potentiality to root-canal problems. - Developement of gum + root-canals infections might be stopped by early issuance of prescribed antibrotics + enamel veneering - Inmate also wishes to have the full meaning of the acronym "J.C." cited in the above Memorandum.

If you need more space, attach one additional sheet.

B. Action Requested: - Emergency Veneering (with Resin) of Teeth: worn-out and edging (temperature sensitive) - Spot bounding of loosen front teeth - Issuance of healing antibiotics - And 2 single-molar denture on each side of remaining teeth for both jaws, as previously requested - S.V.P.

Inmate/Parolee Signature: Tim Nguyen     Date Submitted: Dec 07-2008

C. INFORMAL LEVEL (Date Received DEC 15 2008)
Staff Response:
Your appeal is **partially granted.** In responding to your appeal I (C. Cook, CEN/Health Program Specialist I/ Dental Services) reviewed your Health Record and found you were last seen 11/21/08 and a full mouth perio-scale was completed. Your current treatment plan identifies your need for extensive dental services and you will be ducated chronologically for each service in the order of importance, which is determined by your attending dentist.

Staff Signature: C Cook HPSI     CDO INITIALS     Date Returned to Inmate: 12/17/08
DEC 19 2008

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Health Care Service Request Form, CDC 7362, Comprehensive Accommodation Chrono, CDC 7410, Trust Account Statement, etc.) and submit for processing to the Health Care Appeals Coordinator at your location within 15 days of receipt of response.

_____

_____

_____

Signature: _____     Date Submitted: _____

CDCR Appeal Number

05-11945

2:15-cv-07600-PSG-AS    Document 1    Filed 09/28/15    Page 55 of 87    Page ID

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE HEALTH CARE**                                    PRISON HEALTH CARE SERVICES
**APPEAL FORM**
CDCR 602-HC (6/08)                                                                        Side 2

**FIRST LEVEL:**    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E.  **REVIEWER'S ACTION (Complete with 15 working days): Date assigned:** _____ **Due Date:** _____

Interviewed by: _____

_____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date: _____

Division Head Approval:
Staff Signature: _____ Title: _____ Date Returned to Inmate: _____

F.  If dissatisfied, explain reasons for requesting a Second-Level Review, and submit for processing to the Health Care Appeals coordinator at your location within 15 days of receipt of response:

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

**SECOND LEVEL:**    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G.  **REVIEWER'S ACTION  (Complete with 10 working days): Date assigned:** _____ **Due Date:** _____

☐ See Attached Letter

Signature: _____ Date Submitted: _____

Health Care Services
Hiring Authority Signature: _____ Title: _____ Date Returned to Inmate: _____

H.  If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review of Health Care issues, submit all documents to:    Office of Third Level Appeals – Health Care
P O Box 4038
Sacramento, CA 95812-4038

**DIRECTOR'S ACTION:** ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

**FILED**

APR 23 2005

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

*NGUYEN TIEN MINH*
(Name) *Facility D3 - 146*
*Centinela St. Prison*
(Address) *P.O. Box 931*
*IMPERIAL, CA. 92251*
(City, State, Zip)
*P. 12755*
(CDC Inmate No.)

# United States District Court
## Southern District of California

*NGUYEN TIEN MINH,*
(Enter full name of plaintiff in this action.)

                Plaintiff,

  v.

*G.J. GIURBINO, Warden, et al*

*(J.L. NICHOLS, COUNSELOR )*
*(I.A. GROSSET, D yard Clinic)*
(Enter full name of each defendant in this action.)

                Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*CV. 05-0130 LAB (JMA)*

Civil Case No. _____
(To be supplied by Court Clerk)

Complaint Under the
Civil Rights Act
42 U.S.C. § 1983

*1st AMENDED*

### A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.

### B. Parties

1. <u>Plaintiff</u>: This complaint alleges that the civil rights of Plaintiff, *NGUYEN TIEN MINH*
(print Plaintiff's name)
*(or TIEN MINH NGUYEN)* *CDC# P.12755*, who presently resides at *CENTINELA STATE PRISON*
(mailing address or place of confinement)
*P.O. BOX 931 - IMPERIAL - CA. 92251*, were violated by the actions
of the below named individuals. The actions were directed against Plaintiff at *Centinela prison*
*During the whole 6 yrs confi-* on (dates) *nement and now*, and *still...*
(institution/place where violation occurred)    (Count 1)    (Count 2)    (Count 3)

2. <u>Defendants</u>: (Attach same information on additional pages if you are naming more than 4 defendants.)

①

K:\COMMON\EVERYONE\1983\1983FORM.COM

**FILED** *82*

**NOT FOR PUBLICATION**

MAR 21 2007

UNITED STATES COURT OF APPEALS

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

NGUYEN TIEN MINH,

      Plaintiff - Appellant,

  v.

G.J. GIURBINO, Warden, Warden; et al.,

      Defendants - Appellees.

No. 05-56029

D.C. No. CV-05-00130-LAB

MEMORANDUM*

---

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Submitted March 12, 2007 **

Before:  KOZINSKI, LEAVY, and BYBEE, Circuit Judges.

    California state prisoner Nguyen Tien Minh appeals pro se from the district

court's judgment dismissing his 42 U.S.C. § 1983 action for failure to state a

claim. We have jurisdiction under 28 U.S.C. § 1291. We review de novo

---

    *    This disposition is not appropriate for publication and is not
precedent except as provided by 9th Cir. R. 36-3.

    **    The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

Case 2:15-cv-07600-PSG-AS     Document 22     Filed 10/11/16     Page 84 of 87     Page ID
#:385
Case 2:15-cv-07600-PSG-AS   Document 1   Filed 09/28/15   Page 49 of 64   Page ID #:49

*83*

dismissals for failure to state a claim under the screening provisions of the Prison

Litigation Reform Act, 28 U.S.C. § 1915A, *Resnick v. Hayes*, 213 F.3d 443, 447

(9th Cir. 2000), and we affirm.

The district court properly concluded that Minh's allegations that

defendants failed to process his grievances failed to state claims under the First or

Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996) (First

Amendment requires officials provide prisoners with "the capability of bringing

contemplated challenges to sentences or conditions of confinement before the

courts"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1998) (order) (no due

process right to a prison grievance procedure).

The district court also properly dismissed Minh's claim that his

constitutional rights were violated when he was found guilty of a rules violation

for failing to report to his work assignment. *See Farmer v. Brennan*, 511 U.S.

825, 837 (1994) ("a prison official cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the

official knows of and disregards an excessive risk to inmate health or safety");

*Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (prisoners may challenge

disciplinary actions that "impose some 'atypical and significant hardship . . . in

relation to the ordinary incidents of prison life.'").

¹⁷ The Court Overlooked the Calif. Code of Regulatn - Title 15
concerning the procedures for work assignment. for "Report of
absence at work".

2

84

Finally, the district court properly dismissed Minh's claims that defendant

Grosset violated his rights under the Eighth Amendment.  Minh's allegations that

Grosset charged him for chronos, delivered medication to the wrong address, and

refused to accept ~~his grievances fail to allege deliberate indifference to a serious~~

~~medical need~~, *see Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), and Minh failed

to adequately allege that Grosset was responsible for the delay in treatment of his

dental needs, *see Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268

(9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil

rights violations are not sufficient to withstand a motion to dismiss.").

*[handwritten annotations:]* Corretn Offic asigned as Med. Assistant (DESK nurse coordinator in charge of issuing DUCAT to Clinic) At the time the procedure was different than when Health Care was taken over by Federal Health Care System –

The remaining contentions lack merit.

All pending motions are denied.

**AFFIRMED.**

3

CDCR # P12755
NGUYEN, TIEN M. - CDCR # P12755
CALIFORNIA MEDICAL FACILITY
PO BOX 2500 - DORM C 115L
Vacaville, CA 95696-2500

UNITED STATES DISTRICT COURT
WESTERN DIVISION
OFFICE OF THE PRO SE CLERK
U.S. COURTHOUSE - ROOM G8
LOS ANGELES, CALIFORNIA 90012



CMF LIBRARY

